THE BALTIMORE AND HAVRE DE GRACE TURN-
PIKE COMPANY *vs.* THE UNION RAILROAD COM-
PANY OF BALTIMORE.

*A Legislative grant of Power to a Railroad Com-
pany to cross a Turnpike not a condemnation of
the Turnpike's franchise—Such Grant does not
impair the Contract of the State with the Turn-
pike Company implied in its Charter — Ultra vires
—Only powers necessarily Incident to those con-
ferred will be Implied.*

The legislature, in the exercise of the right of eminent domain, can em-
power a railroad corporation to cross another railroad or a turnpike
road, on making compensation; and, whatever damage may result
therefrom, the exercise of such a right cannot be considered as the con-
demnation of a franchise, nor the impairment of a contract within the
meaning of the Constitution of the United States.

A legislative grant of powers to a corporation, sanctions only such im-
plied powers as are necessarily incident to those expressly bestowed.

The U. R. R. Co. was empowered by its charter to construct a railway
between two *termini* so situated as to make it necessary to cross the B.
and H. Turnpike road.   In addition to the main stem, the R. R. Co.
built a lateral road, which also crossed the Turnpike road, in order to
connect with the P., W. & B. R. R.   HELD:

That the right to build the lateral road across the turnpike could not arise
by implication from a provision in the charter of the U. R. R. authoriz-
ing all railroad companies upon equal terms, to run their locomotives
and cars over the tracks of the U. R. R. Co.

APPEAL from the Circuit Court for Baltimore County, in
Equity.

The facts are given in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART,
BRENT, ALVEY and ROBINSON, J.

*Arthur W. Machen* and *Geo. H. Williams*, for the appellant.

There is no warrant in the charter of the appellee for the second crossing at grade, and any attempt so to do would be *ultra vires.*

Whilst in the exercise of the power of eminent domain, a franchise may be condemned, it must be as an entirety, and cannot be fractionalized. *West River Bridge vs. Dix,* 6 *How.,* 529; 1 *Redf. on Railw.,* sec. 70; *Bridge Proprietors vs. Hoboken Co.,* 1 *Wall.,* 116.

If the apprehensions of the appellant be well founded, and the uncontradicted testimony of all the witnesses be true, that the tolls will not suffice to keep up the road, the Turnpike Company would be without legal defence to any *scire facias* issued by the State, and the duration of their corporate existence would depend on a contingency. *Wash. & Balto. Turnpike Co. vs. State,* 19 *Md.,* 239; 3 *Wall.,* 213, 214.

The appellant's charter is a contract with the State for an unobstructed highway in perpetuity, and not for a crippled road, with revenues so diminished as to make the life of the corporation precarious, and its existence a mere probability. *Binghampton Bridge,* 3 *Wall.,* 73.

The State cannot impair a contract, and the extent of impairment, if the act done amount to impairment, is a matter of no consequence. 4 *G. & J.,* 109, 149; *Boston Water P. Co. vs. B. & Worc. R. R.,* 23 *Pick.,* 394; 17 *Conn.,* 54; 11 *Leigh,* 81; 21 *Ver.,* 595.

The charter of the Union Railroad Company contains no provision for compensation for such an interference with the easement enjoyed by the Turnpike Company, or for the taking of a portion of its franchise. The power to condemn land or materials, does not extend to an encroachment like this, upon an incorporeal right. And as the Act does not provide for compensation, the railroad company cannot exercise its powers in such manner as to interfere with the Turnpike Company's franchise, without first obtaining the consent of the latter

company. *Boston and Lowell R. R. Co. vs. Salem and Lowell R. R. Co.*, 2 *Gray*, 37.

*Wm. A. Fisher* and *Bernard Carter*, for the appellee.

The Legislature, in the exercise of the right of eminent domain, can authorize and empower a railroad corporation to cross another railroad or turnpike road, on making compensation, and the grant of such power is not a violation of the Constitution of the United States. *Boston Water P. Co. vs. Bos. and Worc. R. R. Co.*, 1 *Amer. Railw. Cases*, 323–7, or 23 *Pick.*, 360; *White River T. Co. vs. Vermont C. R. R.*, 21 *Ver.*, 591, 592–4; *Enfield Bridge Co. vs. Hart. & N. H. R. R.*, 17 *Conn.*, 461, 462; *Tuckahoe Canal Co. vs. Tuckahoe R. R. Co.*, 11 *Leigh*, 70, 71, 73, 74, 75; *West River Bridge Co. vs. Dix*, 6 *How.*, 529, 535, 541, 544; *Richmond, &c., R. R. Co. vs. Louisa. R. R. Co.*, 13 *How.*, 78, 80; 42 *Barb.*, 120, 122; *Backus vs. Lebanon*, 11 *New Hamp.*, 22–4; *New Castle R. R. Co. vs. Penn. R. R. Co.*, 3 *Ind.*, 468, 469, 470; *The Bellona Co's Case*, 3 *Bland*, 449, 450.

It is the easement in the land, and not the franchise, which is condemned. 6 *How.*, 541; 3 *Bland*, 449, 450; *Peirce on Railw.*, 152, n. 1.

The Legislature has granted the power to the appellee to make the crossings. Nothing was necessary except to fix the termini, and the appellee could then select its route between the given points. 1 *Amer. R. W. Cases*, 328, 329, 331; 11 *Leigh*, 79; 17 *Conn.*, 464, 465; 3 *Ind.*, 467; 13 *How.*, 78; 4 *Cush.*, 72; *Peirce on Railw.*, 155.

These cases abundantly show that the power to cross all intermediate roads results from the fixing of the termini; this is sufficient for our purposes, especially as it is physically impossible to build a road between the termini fixed by the Legislature, without crossing the appellant's road. But, if it were necessary, the power is expressly confined to cross all roads, by the 16th section of the Baltimore and Ohio Railroad Charter, made part of that of the appellee. *White River*

*T. Co. vs. Ver. C. R. R. Co.,* 21 *Verm.,* 596 ; *Rogers vs. Bradshaw,* 20 *Johns.,* 742, 743.

The power to cross being conferred, there is sufficient provision in the charter for the condemnation of the appellant's easements. The term "land," in such charters, includes every possible interest in lands. 17 *Conn.* 462, 463 ; 1 *Amer. Railw. Cases,* 327 ; 11 *Leigh,* 77, 78 ; 21 *Ver.,* 597 ; *Peirce on Railw.,* 152, *n.* 1, and 154.

And in fact, so far as the viaduct crossing was concerned, there was no necessity for a condemnation. The appellant has merely an easement, and that and the easement of the appellee can well coëxist. *Peirce on Railw.,* 178, 216 ; 11 *Leigh,* 81.

The only remaining proposition is in regard to the power of the appellee, under the terms of the charter, to build the switch across to the Baltimore, Philadelphia and Wilmington Railroad. The 10th section of the Act of 1870, ch. 412, authorizes all railroads to run their cars and locomotives over the railroad of the appellee, when constructed. The road was to be a trunk road, as all roads so built through a city should be, for all railroad companies that might wish to use it. The roads which it would cross and connect with at present, and which were more immediately in the contemplation of the Legislature, were the Baltimore, Philadelphia and Wilmington Railroad, the Northern Central Railway, the Baltimore and Potomac Railway, and the Western Maryland Railway ; but the Legislature thought best to make use of language which would be applicable as well to those as all other railroad companies which might in the future come in contact with the Union Railroad. There could be no doubt that, had the 10th section expressly provided that the Philadelphia, Wilmington and Baltimore Railroad Company, should have the right to run its cars and locomotives on the tracks of the Union Railroad, that language, with that of the 9th section, would have fully authorized the construction of such a switch, and it is difficult to see how the grant of a power to

use the tracks for its locomotives and cars, by the Philadelphia, Wilmington and Baltimore Railroad, in connection with other companies, could be less effectual. *State vs. Mansfield*, 3 *Zabr.*, (*N. J.*,) 512–14; *N. O. R. R. vs. N. O.*, 1 *Lou. Ann.*, 128; 11 *Hump.*, 348, 351; *Chicago, &c., R. R. vs. Wilson*, 17 *Ill.*, 124; *State vs. N. C. R. R.*, 18 *Md.*, 217, 218; 17 *Conn.*, 465; 11 *Leigh*, 52.

ROBINSON, J., delivered the opinion of the Court.

The bill alleges that the complainant was empowered by its charter, granted in 1813, to build a turnpike road from Baltimore to Havre-de-Grace; that by subsequent legislation the road was suffered to terminate twenty-three miles from the city; that the road was accordingly built at a cost of about $100,000, and licensed for taking tolls; and that the tolls received therefrom have averaged for some years past seven thousand dollars per annum; that there are now but three toll-gates on the road—one near the City of Baltimore, another about ten miles therefrom, and the third about sixteen miles; that the portion of the turnpike between the second and third mile-stones, and beyond the first gate, is nearly or quite level, and is preferred by those having fast horses to any other similar road anywhere in the vicinity of said city, and that with other advantages peculiar to said road, constitutes a great inducement to the use thereof and the travel thereon, and is a great source of profit; and that the tolls received from the first gate *are the main source of revenue to the complainant.*

The bill charges that the appellee was chartered by the Acts of 1866, 1867 and 1870, for the purpose of making a railway with its terminus on tide-water at Canton, and that under its supposed powers for condemnation has summoned a jury and condemned two crossings over the turnpike road of the complainant, and selected for the same the part of the road above mentioned—one of said *crossings* being by a *viaduct twenty feet high*, intended for the termination of the railroad at Canton, and the other a *grade crossing*, to form a lateral connec-

tion with the Philadelphia, Wilmington and Baltimore Railroad, and that the jury have awarded *five thousand dollars* as *damages* for *such crossings.*

The bill then charges that the second crossing is *ultra vires,* and that either or both of said crossings will irreparably injure the complainant's franchises; that the verdict of the jury is a mere pittance; that the complainant apprehends and charges that if either or both of the crossings be made, the travel would be so banished as not to leave receipts sufficient, *probably,* to keep the road in repair, as required by its charter, and, therefore, places in *probable* peril and jeopardy its corporate existence, and destroys all hopes of future dividends.

The complainant avers that its charter is a contract with the State of Maryland, and while it does not dispute that in the exercise of the *power of eminent domain,* the State has a right to provide for the condemnation of the road and franchises as an *entirety,* yet the State can pass no law impairing the obligation of contracts; that the complainant's contract with the State was for a free and unobstructed road, and they are not bound to work a road so crippled as to furnish insufficient revenue to keep the same in proper condition, and necessarily to be managed in future under difficulties not now existing, and at constant peril of the forfeiture of its charter; nor can the State itself, nor any corporation professing to be by it authorized, fractionalize said contract or in any manner impair its validity.

The bill then prays that the appellee may be compelled to condemn the charter of the complainant as an entirety, if it resorts to condemnation; that the proceedings already taken may be declared a nullity, and the company enjoined from making said crossings.

It is conceded then, that the State may, in the exercise of the power of eminent domain, condemn the franchise of the complainant, but it is insisted that such condemnation must be of the entire franchise and not a fractional part thereof. Whatever force there may be in this view, it is sufficient to

say, that no attempt has been made on the part of the State, nor by the appellee, to condemn the franchise of the appellant. In authorizing the appellee to build a railroad between the termini fixed by its charter, the Legislature did not intend to condemn or revoke the franchise of the appellant, nor is such the effect and operation of the grant. If in the construction of the road of the appellee to tide-water at Canton, it is necessary to cross the turnpike road of the appellant, such a crossing cannot in any proper legal sense be considered as a condemnation of the franchise of the latter. On the contrary, its franchise—its corporate existence—its use of the turnpike road, with the right to collect tolls thereon—still remain, and the grant to the appellee is but an appropriation of the land, over which the franchise of the former is used, to another distinct public use, not inconsistent with the user and easement of the appellant. This subsequent appropriation, it is true, may interfere with the travel on the road of the appellant to the extent of diminishing the tolls received on account thereof, but the injury and damages accruing therefrom, be they ever so great, are matters for the consideration of the jury in awarding compensation.

Whether adequate compensation has been awarded in this case, is not a question before us in this appeal. We deem it unnecessary to extend this opinion by a review of the many cases in which these questions have arisen, or of the principles upon which they have been decided. It is sufficient to say, that after an examination of all the cases referred to, we are of opinion that the Legislature, in the exercise of the right of eminent domain, can authorize and empower a railroad corporation to cross another railroad or turnpike road, on making compensation, and whatever damage may result therefrom, the exercise of such a right cannot be considered as a condemnation of a franchise, nor the impairment of a contract, within the meaning of the Constitution of the United States. *Boston Water Power Co. vs. Boston and Worcester R. R. Co.,* 1 *American Railway Cases,* 323; *Tuckahoe Canal Co. vs. Tucka-*

*hoe R. R.*, 11 *Leigh*, 70; *White River Turnpike Co. vs. Vermont C. R. R.*, 21 *Vermont*, 591; *Enfield Bridge Co. vs. Hart. and New Haven R. R.*, 17 *Conn.*, 461; *West River Bridge Co. vs. Dix*, 6 *How.*, 529; *Richmond, &c., R. R., Co. vs. Louisa. R. R.*, 13 *How.*, 79; *Backus vs. Lebanon*, 11 *New Hampshire*, 22; *New Castle R. R. Co. vs. Penna. R. R.*, 3 *Ind.*, 468; *Peirce on Railways*, 152, *note* 1.

But in addition to the viaduct crossing, intended for the railroad termination at Canton, the appellee claims the power under its charter, to build a lateral road connecting with the Philadelphia, Wilmington and Baltimore Railroad, and as incident thereto, the right to condemn a grade crossing over the turnpike road of the appellant. The grant of a right to take private property for a public use, or to subject property already appropriated to a public easement, to other and distinct easements and uses, is the highest exercise of legislative power, and such a grant ought to be conferred in language clear and unequivocal. The authority in this case to build a lateral road, we do not understand as being claimed under an express grant, but is said to arise by necessary implication under the 10th section of the Act of 1870, chapter 412, which authorizes *all railroad companies upon equal terms, to run their locomotives and cars over the tracks of the appellee.* It may be true, that every grant is intended to be beneficial, and carries with it such incidental powers as may be necessary to its exercise or enjoyment. If the exercise of the power granted draws after it some other right *necessarily incident*, the law may be said to contemplate and sanction the exercise of that right. Now, what is the right granted by the 10th section of the Act of 1870? It is, that all *railroad companies* shall have the right upon equal terms to run their locomotives or cars over the railroad of the appellee. By its original charter, Act of 1866, chapter 119, this right was conferred only upon the Northern Central and the Western Maryland Railroad Companies, but the charter was amended by the Act of 1870, and all railroad companies were autho-

rized to use its tracks. The question is not whether these railroads are authorized to build lateral roads connecting with the railroad of the appellee, as incident and necessary to the beneficial enjoyment of the right to use the tracks of the appellee, but whether this section confers upon the latter the power to build lateral roads in every direction, connecting with all railroads running to Baltimore city. We are of opinion that it does not. No such power is expressly conferred, nor does it arise by necessary implication from the exercise of the right and privilege granted to the railroad companies—nor from the application of this section to the purposes and objects for which the appellee was chartered.

We are of opinion, therefore, that the injunction ought to have been granted, so far as respects the condemnation of the grade crossing on the lateral road connecting with the Philadelphia, Wilmington and Baltimore Railroad, and the decree of the Court must be reversed and the cause remanded, in order that another decree may be passed in conformity with the opinion of this Court.

*Decree reversed and*<br>*cause remanded.*