(Decided 22nd July, 1881.)

THE CUMBERLAND AND PENNSYLVANIA RAILROAD COMPANY, and the BALTIMORE AND OHIO RAILROAD COMPANY *vs.* THE PENNSYLVANIA RAILROAD COMPANY IN MARYLAND. THE CUMBBERLAND AND PENNSYLVANIA RAILROAD COMPANY *vs.* THE PENNSYLVANIA RAILROAD COMPANY IN MARYLAND.

*Special and Exclusive Jurisdiction of a Circuit Court as a Court of Law, to hear and determine all questions arising upon an application to Confirm an Inquisition Condemning Land as a Crossing for the use of a Railroad—Injunction—Appeal.*

Bills were filed by the appellants in separate cases, in the one case by the C. & P. R. R. Co. and the B. & O. R. R. Co., and in the other, by the P. & C. R. R. Co. alone, seeking to restrain the P. R. R. Co. in Md., in the one case, from proceeding further with its proposed condemnation of an easement of crossing of a lot theretofore belonging to the B. & O. R. R. Co., outside of its regular line of condemnation, and extending to the line of condemnation of the C. & P. R. R. Co. at its point of connection with the B. & O. R. R. Co., but which had been since acquired by the C. & P. R. R. Co.; and which proceedings were then pending in the Circuit Court awaiting confirmation: and in the other, after

C. & P. R. R. Co. and B. & O. R. R. Co. *vs.* Pa. R. R. Co. in Md.

the said proceedings for confirmation had been confirmed by the Court; to restrain the P. R. R. Co. in Md. from destroying, injuring or in any way interfering with a station-house and other property of the C. & P. R. R. Co. erected upon the lot, and from laying and maintaining its tracks upon the site of the station-house and other property; from interfering with the C. & P. R. R. Co., and its officers, agents and employés in the possession of the station-house and property, and in the repair and restoration thereof, in the event of the same having been injured or impaired before the service of the writs of injunction; both bills concluding with a prayer for general relief. It appeared from the bills, that the P. R. R. Co., by the inquisition to condemn the lot for a crossing, was proceeding to do something its charter contemplated. HELD:

1st. That there was no ground stated in the first bill, that was not open to the appellants by way of objection to the confirmation of the inquisition; and that jurisdiction having been specially conferred upon the Circuit Court to hear and determine all objections that could be urged to the ratification of the inquisition, the Court below, as a Court of equity, could not rightfully interfere with that exclusive jurisdiction; and that if it were true, as alleged, that the appellee had no power to take by condemnation the property of the appellants, or that the property attempted to be taken was not subject to such condemnation, such objection could have been assigned against the confirmation of the inquisition, and like all other objections, was required to be made by way of exception.

2nd. That no sufficient ground for an injunction was shown by the allegations of the second bill.

No appeal lies to this Court from a decision of a Circuit Court, in the exercise of the special, limited jurisdiction conferred upon the the Circuit Court in cases of condemnation of land by inquisition.

APPEALS from the Circuit Court for Allegany County, in Equity.

The case is stated in the opinion of the Court. The previous contention of the Consolidation Coal Company and the Cumberland and Pennsylvania Railroad Company, with the Pennsylvania Railroad Company in Maryland, is reported in 55 *Md.*, 158.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ROBINSON, IRVING, and MAGRUDER, J.

*William F. Frick,* for the appellant, the Cumberland and Pennsylvania Railroad Company.

*1. Nevett Steele,* for the appellant, the Baltimore & Ohio Railroad Company.

*Ferdinand Williams* and *William Walsh,* for the appellee.

MAGRUDER, J., delivered the opinion of the Court.

The appeals in these two cases have been argued together, and as they present substantially the same questions, one opinion will serve for both.

The bills were filed, in the one case by the Cumberland & Pennsylvania Railroad Company and the Baltimore & Ohio Railroad Company, and in the other by the first named Company alone, seeking to restrain the Pennsylvania Railroad Company in Maryland in the one case, from proceeding further with its proposed condemnation of an easement of crossing, of a lot theretofore belonging to the Baltimore & Ohio Railroad Company outside of its regular line of condemnation, and extending to the line of condemnation of the Cumberland & Pennsylvania Railroad at its point of connection with the Baltimore & Ohio Railroad, but which had been since acquired by the Cumberland & Pennsylvania Railroad Company; and which proceedings were then pending in the Circuit Court, awaiting confirmation : and in the other, after the said proceedings for condemnation had been confirmed by the Court; to restrain the defendant from destroying, injuring or in any way interfering with, a station house and other property of the Cumberland & Pennsylvania Railroad Company erected upon the said lot, and from laying and

maintaining its tracks upon the site of said station house and other property, from interfering with the complainant and its officers, agents and employés in the possession of the said station house and property, and in the repair and restoration thereof, in the event of the same having been injured or impaired before the service of the writs of injunction ; both bills concluding with a prayer for general relief.

It is unnecessary to refer to the averments of these bills in regard to previous proceedings and negotiations between these companies, with reference to the crossing of the tracks of the first named complainant at other points ; as those are matters which seem in no way connected with the present grounds upon which we deem the decision to rest ; nor to a good many other extraneous matters not in anywise affecting the merits of the case.

The injunction in each case, was refused by the learned Judge of the Circuit Court, on the ground that the jurisdiction to determine the matters in controversy, was in the Circuit Court sitting in review of the condemnation proceedings ; and in his opinion, refusing the injunction we fully concur. Not only were the alleged grounds of objection open to the complainant by way of objection to the confirmation of the inquisition at the time of filing the first bill ; but the said company did actually go into the said Court, and made objections to the confirmation of the inquisition ; and if it did not make all the objections, jurisdictional or otherwise, that could be made to the confirmation, it was its own fault, and it cannot complain if there was any omission ; and if its objections did not receive due consideration by that Court, or were erroneously decided ; it is still bound by the decision ; and we can see no reason why it should have another trial of the same questions, by the same Court, sitting in another capacity, and having no more ample power or authority to decide the questions involved, while sitting in the one capacity than in the other.

APRIL TERM, 1881. 271

C. & P. R. R. Co. and B. & O. R. R. Co. *vs.* Pa. R. R. Co. in Md.

We are of the opinion that the right to the interference of a Court of equity, for the purposes alleged in these bills, and under the alleged facts and circumstances which are made the groundwork of the claim to relief, has been negatived by the current of decisions in this State and elsewhere, as well as by the fundamental principles defining the line of demarcation between the jurisdiction of Courts of law and Courts of equity.

We will first refer to these elementary principles of equity jurisdiction, limiting the class of cases in which the protective remedy by injunction can be invoked.

In 1 *Story Eq.*, (12*th Ed.*,) *sec.* 33, it is said:

"Perhaps the most general, if not the most precise description of a Court of equity, in the English and American sense, is, that it has jurisdiction in cases of rights, recognized and protected by the municipal jurisprudence, where a plain, adequate, and complete remedy cannot be had in the Courts of common law. (*Cooper Eq. Pl.*, 128, 129 ; *Mitford Pl. Eq.*, *by Jeremy*, 111, 123 ; 1 *Wooddes.*, *sec. VII, pp.* 214, 215.) The remedy must be plain ; for if it be doubtful and obscure at law, equity will assert a jurisdiction. (*Rathbone vs. Warren*, 10 *Johns.*, 587 ; *King vs. Baldwin*, 17 *Johns.*, 384.) It must be adequate ; for if at law it falls short of what the party is entitled to, that founds a jurisdiction in equity. And it must be complete ; that is, must obtain the full end and justice of the case. It must reach the whole mischief, and secure the whole right of the party in a perfect manner, at the present time and in future ; otherwise, equity will interfere and give such relief and aid as the exigency of the particular case may require. The jurisdiction of a Court of equity is, therefore, sometimes concurrent with the jurisdiction of a Court of law, it is sometimes exclusive of it; and it is sometimes auxiliary to it."

And on the specific question of the remedy by injunction to interfere with proceedings at law, it is said in *Kerr on*

C. & P. R. R. Co. and B. & O. R. R. Co. *vs.* Pa. R. R. Co. in Md.

*Injunctions,* (2nd *Edition,* 581:) "If the defendant at law has a good defence at law, and the remedy at law. is as perfect and complete as the remedy in equity, the Court will not restrain the action."

This is subject to the qualification that the party has not been deprived of his defence by surprise, accident or fraud. (*Adams' Eq.,* 197.)

"And still less can any equity arise, if the facts were known at the trial, and the grievance complained of has been caused either by a mistake in pleading or other mismanagement or by a supposed error in the judgment of the Court." (*Id.*)

And in 3 *Waits' Actions and Defences,* 684: "But it is an established principle that a Court of equity will not lend its aid to restrain by injunction, the commission of any act injurious to the complainant where he has an adequate remedy at law. And where the party asking an injunction has an adequate remedy by a statutory proceeding, though it is one not known to the common law, an injunction should be refused upon the same general ground as where there is an adequate remedy at law."

And upon this question *of a remedy by a statutory proceeding,* as excluding interference by injunction, there are many and conclusive authorities. It was pointed out and enforced very clearly in *Hamersley vs. Germantown, &c. Turnpike Co.,* 8 *Phil.,* (*Penn.,* 314.)

In *Hardinge vs. Webster,* 1 *Dreney & Smale,* 107, which was a bill to restrain the defendant from taking steps to recover from a shareholder a debt due by a corporation, the relief was refused on the ground that an Act of Parliament gave a remedy by a specific proceeding. The Court says: "But I apprehend that the very purpose and object of the Act was to enable a Court of law to determine to what extent, or whether at all, a shareholder should be made liable on this proceeding, which

is by way of substitute for *scire facias.* It will be Dr. Hardinge's fault if he does not bring all the circumstances of the case before the Court of law."

And in *Johnson vs. Jones,* 75 *N. C.,* 206, an injunction was refused on the ground of the statute having afforded a specific remedy by a proceeding at law.

In *Gott and Wilson vs. Carr,* 6 *G. & J.,* 312, where it was sought to restrain the execution of judgments rendered by a justice of the peace, upon certain alleged equitable grounds, the Court (BUCHANAN, C. J.,) uses this language:

"It is a salutary principle of law, that every person is bound to take care of and protect his own rights and interests and to vindicate them in due season, and in the proper place. And that if a defendant having the means of defence in his power in an action against him in a competent tribunal, neglects to use them, and suffers a recovery to be had against him, he is forever precluded from obtaining relief in chancery, in relation to the same matter. The application of this principle may not be universal; but the cases in which chancery will furnish relief against recoveries suffered to be had at law, are exceptions. The well settled general rule being, that a Court of equity will not relieve against a recovery in a trial at law, unless the justice of the verdict can be impeached by facts or on grounds, of which the party seeking the aid of chancery, could not have availed himself at law, or was prevented from doing it by fraud or accident, or the act of the opposite party unmixed with any negligence or fault on his part.

"And chancery will only sustain a bill invoking its aid upon some new matter of equity, not arising in the former case; or seeking some relief to which the powers of the Court of law were not fully adequate."

And in the like cases, in *Lyday vs. Douple,* 17 *Md.,* 188, and *Chappell vs. Cox,* 18 *Md.,* 513, the same principle is declared.

Upon the like ground of confining the party to the tribunal specially provided by law to decide the merits of his controversy, are the cases denying the right of appeal to this Court in these cases of condemnation.

In the *Condon Case*, 8 *G. & J.*, 448, the Court say :

" There is no appeal expressly given to the Court of Appeals, under the Act of Assembly investing the County Court with the power of reviewing and confirming, or setting aside inquisitions like the present. From the nature and course of their proceedings, this power of review is a fit subject for litigation in a County Court, but is wholly inappropriate to the jurisdiction of this Court. It is a special limited jurisdiction given to the County Court, from the decision of which no appeal lies to any other tribunal."

And in the *Turnpike Co. vs. Nor. Cent. R. W. Co.*, 15 *Md.*, 197, it is declared to be a well settled doctrine, " that where the Circuit Court is clothed with a special jurisdiction, and no appeal to this Court is provided for, the judgment is final, whether pronounced in the exercise of original jurisdiction, or in the nature of an appeal from some inferior authority,"—referring to *Condon's Case*, 8 *G. & J.*, 443 ; *Carter vs. Dennison*, 7 *G.*, 157 ; *Lammott vs. Maulsby*, 8 *Md.*, 5.

These authorities are referred to so much at length, though not on the precise point before us, to illustrate the principle of confining parties to the special tribunal devised for their defence, or for the assertion of their rights. And we have seen that this is laid down in the books as one of the grounds for denying the aid of a Court of equity.

And, as we will see hereafter, the cases in which anything to the contrary would seem to be stated, are cases in which the whole proceeding was absolutely void *ab initio*, and giving no jurisdiction whatever over the subject-matter to the specially constituted inferior tribunal,

and thereby allowing an appeal from the revising Court in cases coming up to it by appeal or upon certiorari, or the intervention of a Court of equity to prevent delay and loss or useless or vexations proceedings that could not lead to any effective result; as for example in the cases of Swann vs. Mayor, &c., of Cumberland, 8 G., 150, and the Turnpike Co. vs. Union R. R. Co., 35 Md., 224, a class of cases which are clearly distinguishable from those now before us.

In our opinion the questions now before us have been authoritatively decided by this Court.

The case of Hamilton vs. The A. & E. R. Railroad Co., 1 Md., 567, in which an injunction was sought to restrain the Company from the user of land it was alleged it had no power to condemn, the Court say:  "We might have refrained from expressing any opinion as to whether the land condemned in the last inquisition was necessary for the use of the company, for the reason that the proceedings were returned to, and ratified by the County Court, a tribunal having exclusive and final jurisdiction over that matter, and from whose decision there is no appeal; as will appear by the case of the Wilmington and Susquehanna Railroad Company vs. Condon, 8 G. & J., 443.

"The County Court was the proper place to have resisted the inquisition before its ratification.   And if there is no right of appeal upon a judgment of ratification, with what propriety can it be said, that long after, when expensive improvements have been put upon the land, a Court of chancery may reverse and nullify the whole proceeding."

And as showing that the question of the power to condemn the particular property in controversy was exclusively a question for the confirming tribunal, the case in 15 Md., 198, (Turnpike Co. vs. Nor. Cen. R. W. Co.) is directly in point. The Court say:  "The charter of the appellee provides for the confirmation of inquisitions by the

276 MARYLAND REPORTS.

C. & P. R. R. Co. and B. & O. R. R. Co. *vs.* Pa. R. R. Co. in Md.

County Courts, if no sufficient cause be shown to the contrary. The words employed, as we think embrace the questions suggested and argued in this cause including, as well, the right of the appellee to condemn the franchise of the appellant, for no better cause could be assigned against the confirmation than want of power to condemn the particular property proposed to be taken. We could not revise a judgment confirming the inquisition without interfering with the exclusive jurisdiction of that Court."

In the case of the *Western Md. R. R. Co. vs. Patterson*, 37 *Md.*, 137, where an injunction was sought to prevent the company from condemning *in fee* land required for its purposes, the Court say : "These objections, if well taken, would be as available if made to the confirmation of the inquisition in the Circuit Court as in a Court of equity. There is no necessity for an injunction (which is an extraordinary preventive power) when the Courts, peculiarly vested with authority over the subject are competent to relieve, and it is a sufficient ground for refusing it, that the complainant has an ample remedy at law." * * * * * * "In 6 *Gill*, 402, Judge DORSEY said, 'to persons aggrieved by the proceedings of the Commissioners in cases like the present, the legislative enactments upon the subject have provided the tribunal and means of redress, and in these only can it be successfully sought.'

"Although the appellants' counsel, under the circumstances of this case, seem to consider the question of jurisdiction unimportant, preferring to have a decision on other points, to avoid what they call ruinous delay ; we think our duty requires we should dispose of it *in limine*, *to prevent all judicial authority from being drawn into a Court of Chancery.*

"There is in our opinion, no jurisdiction in the Circuit Court of Baltimore City, or the Circuit Courts generally, to enjoin proceedings *in fieri*, under the charters of the

appellants, for objections apparent, on their face, or other-
wise; *the Circuit Courts having special and competent au-
thority to judge and determine them."*

And then follows this language which has given rise
to some misconstruction:

" We do not mean to affirm, there is no case in which
a Court of Chancery may interfere to prevent the abuse
of a power of condemnation by color of an Act of incorpora-
tion, whilst the proceedings are *in fieri* and subject to
be confirmed or rejected; but to insist that whilst the
powers of the special tribunals to afford relief, are ample
and unexhausted, the Court of Chancery should not inter-
vene, *upon a mere allegation that the corporation is exceed-
ing its charter or violating the Constitution."*

The Court in that case did not undertake to specify
the class of cases, in which a Court of equity could inter-
vene to stop proceedings of condemnation *in fieri*, or to
enjoin the use of property, when condemned without juris-
diction in the condemning tribunal, whose proceedings
would therefore be void. That was not such a case, it
was clear; and this case, presenting identical questions,
is not such a case. But there is no difficulty in distin-
guishing these cases from those in which a Court of equity
could intervene.

A case in which a Court of equity may intervene is
presented in *Turnpike Co. vs. Union R. R. Co.*, 35 *Md.*,
224, which is an example of the class of cases recognized
in 37 *Md.*

In the case in 35 *Md.*, the company was restrained
from maintaining proceedings to condemn a right of way
for a branch or lateral road which its charter gave it no
power to build, and which it was just as much beyond its
power to do, as it would have been to build an indepen-
dent railroad, remote from its line and in a different part
of the State, or as it would have been for individuals not
incorporated at all to undertake to condemn for the con-

struction of a railroad. The proceeding was absolutely void, the condemning tribunal was without jurisdiction, and the Court could see from the face of the bill and the charter of the company that the proceeding was absolutely null and void, and if confirmed could give no power to the company to use the lateral road; and so to prevent delay and cost and circuity of action, as the proceeding might be protracted by having inquisitions set aside and new ones ordered from time to time, the Court of equity intervened to protect the land owner against an unwarrantable appropriation of his land by a proceeding which could confer no title. The opinion in the case in 37 *Md.*, distinguishes the class of cases in which an injunction may be invoked from those in which it may not: "The distinction between the cases where the proceedings are void, for want of authority, and irregular or defective because of some omission or neglect which may be cured *pendente lite,* or taken advantage of whilst *in fieri* is broadly taken and sustained in the case of *Page vs. Mayor, &c. of Balto.,* in the opinion of this Court in 34 *Md.*, 564, 565."

As in the case of the *Union R. R. Co.* in 35 *Md.*, the act of a company in attempting to build a road other than the one its charter provides for, is just as if it were acting without any charter.

But that is a very different thing from the case of a company seeking to condemn land for the purpose of building its road authorized by its charter; in which case whether the particular property it is seeking to condemn for that purpose, is liable or any question of the mode of procedure or any matter of irregularity in the exercise of the power, are only questions of the *quo modo* of exercising the chartered power; such as whether that power has been exhausted by one condemnation as in 1 *Md.*, 553; all of which acts are voidable merely, and not void, however irregular, or however effective as grounds of objec-

tion to the confirmation of the inquisition before the proper tribunal having exclusive jurisdiction over it.

So that when the bill in these cases alleges, that the Pennsylvania Railroad Company in Maryland, was chartered to build a railroad from Ellerslie to some convenient point in Cumberland, and that the acts complained of, are in furtherance of the object of building its road to a point in Cumberland, which the company itself is alleged to have selected; we see that it is proceeding to do something its charter contemplated, however irregular may be the mode of its exercise, and however alleged irregularities might be grounds for excepting to the inquisition before the proper forum; and that the proceedings cannot be considered absolutely void, and as therefore presenting proper ground for the interference of a Court of equity. And the alleged ground that the property or right sought to be condemned was the right of way across the land of another railroad company, already acquired by its charter for its own purposes, would not vary the question of jurisdiction, as that would not necessarily render the proceeding void.

These, as we have said before, are all questions properly within the jurisdiction and cognizance of the Court of law, sitting in review of the condemnation proceedings, and therefore cannot furnish any ground for the intervention of a Court of equity. The objection to allowing these proceedings for condemnation to be drawn in question in a Court of equity, and the policy of the law in making the decision of the Circuit Court final, is thus forcibly stated in *New Central Coal Co. vs. Iron Co.*, 37 *Md.*, 565; "The proceedings on the return of the inquisition are intended to be summary and expeditious, and are never attended with the delays that are necessarily incident to suits in chancery. If such questions were allowed to be drawn to a Court of equity, great inconvenience, and frequently ruinous delays, would likely be the consequence."

C. & P. R. R. Co. and B. & O. R. R. Co. *vs.* Pa. R. R. Co. in Md.

For these reasons, we think the orders appealed from should be affirmed.

*Orders affirmed.*

(Decided 22nd July, 1881.)

MILLER, J., filed the following dissenting opinion :

Upon this appeal the Court is confined to the case made by the bill, the averments of which must be taken as true.

That the complainants had the right to establish a depot at the Cumberland terminus of their road, to erect there a station house for passengers, to lay a side track for local freight delivery, to construct other terminal improvements, and to acquire and devote to such purposes: the lot referred to, provided in so doing they acted in *good faith*, as the bill avers, and under the circumstances. stated in their bill, are propositions which appear to me too plain to admit of argument.  And in my judgment, it is equally clear the defendants had no power to construct their road across this lot and through these improvements. They were originally incorporated under the free railroad law of 1876, ch. 242.  In my opinion, that Act gives no power to corporations created under it to cross even the *tracks,* much less to run through the station houses, depots and terminal improvements of other railroads.  They applied for and accepted the Act of 1878, ch. 192, as an amendment to their charter.  That Act, among other provisions, gave them power in constructing their main road, and a branch from it to the Canal, " to cross the *tracks* " of the complainants' main road west of the narrows, " to cross the Potomac Wharf Branch," and " to cross the *track* or *tracks* of the Baltimore & Ohio Railroad at one point," but it nowhere gives them power to run through the station houses and depots of either road, or to cross lots lawfully acquired, and held and devoted by either company to such legitimate corporate purposes.

But conceding they had no power to make the condemnation in dispute, it is argued that the determination of this question of power, as well as all other objections to the inquisition, is confided exclusively to the confirming Court, and a Court of equity has no jurisdiction to interfere. Plainly stated, the proposition amounts to this, that an inquisition altogether *ultra vires* and therefore *void*, is made *valid*, and a Court of equity cannot prevent the condemned property from being taken under it, if it has once been confirmed by the Court to which it is required to be returned. It is easy to perceive the evil and ruinous consequences that may result to the rights of property owners, whether individual or corporate, from the establishment of this doctrine. But it is argued that such is the effect of the decisions of this Court. I do not so understand them.

In *Hamilton vs. Annapolis & Elkridge Railroad Company*, 1 *Md.*, 553, two inquisitions were taken to condemn property of the same owner, and both were confirmed. The latter was for the purpose of condemning land and a house, for the establishment at the junction of the company's road with that of the Baltimore and Washington road, of a depot, station house and warehouse for the storage of goods intended for transportation. The Court decided two questions: *first*, that the company under its charter, had power to take out the second inquisition before the road was finished; and *second*, that the property condemned under the last inquisition was necessary for the company. The Court then say that having decided the *first* question, they might have refrained from expressing any opinion as to the *second*, for the reason that the proceedings were returned to and ratified by the County Court, a tribunal having exclusive and final jurisdiction over *that matter,* and from whose decision there is no appeal. I do not find in that case any intimation that if the question of *power* to take the second inquisition

had been decided against the company, the injunction would not have been granted. In fact, the carefully guarded language of the opinion carries with it a strong implication to the contrary.

In the case of *Turnpike Co. vs. Railroad Co.*, 15 *Md.*, 193, the railroad company was proceeding to condemn a crossing over the turnpike in perpetuity. Before the warrant was fully executed, the Turnpike Company obtained a *certiorari* and brought the proceedings before the Superior Court. That Court quashed the writ, and from the quashing order an appeal was taken. The first question considered by the learned Judge, who delivered the opinion of the Appellate Court, was whether an appeal to that Court would lie in cases of *certiorari*; and as to this, he said the case of *Swann vs. Mayor, &c. of Cumberland*, 8 *Gill*, 150, " would be an authority for our considering the questions presented by the record, were it not for the well settled doctrine that where the Circuit Court is clothed with a special jurisdiction, and no appeal to this Court is provided, the judgment is final, whether pronounced in the exercise of original jurisdiction, or in the nature of an appeal from some inferior authority." Applying this doctrine to the case before him, he said the charter of the appellee provides for the confirmation of inquisitions by the County Courts, "if no sufficient cause be shown to the contrary," and he held that these words embraced the question as to " the right of the appellee to condemn the franchise of the appellant, for no better cause could be assigned against the confirmation than want of power to condemn the particular property proposed to be taken ; " and he then adds, " we cannot *revise* a judgment confirming the inquisition without interfering with the exclusive jurisdiction of that Court." If by this, the Court meant to say, they had no *appellate* jurisdiction over such a judgment, it would be consistent with all the authorities, but if they intended to assert the broad

proposition that a Court of equity has no jurisdiction or control over such judgments, and no power to interfere with a ratified inquisition, then I do not see how such a doctrine can be reconciled with the decision in *Kane vs. Mayor, &c., of Balt.*, 15 *Md.*, 240, made at the same term and by the same Judges. In that case, the Mayor and City Council of Baltimore, under an Act for supplying the inhabitants of the city with pure water, were authorized to condemn land and water courses. Under this power, the city condemned *in fee simple*, the bed of Jones' Falls. The inquisition was not only confirmed, but on a bill of interpleader to determine who was entitled to the money awarded as damages, a decree was passed declaring that the city was "entitled to a *fee simple* estate in the property in the condemnation mentioned," and then directing how the money should be distributed. After this, the city authorities, in the exercise of the rights of a fee simple owner, which the confirmed inquisition upon its face plainly gave, proceeded to lower and take down a dam, which conducted the water of the stream to an adjacent mill. The mill owner then filed a bill in equity, for an injunction to restrain this proceeding. The Court below dissolved the injunction, but on appeal, this Court ordered the injunction to be continued, holding that the city had no power to use the water for any other than the public purpose specified in the Act, and that all such use of the water as did not interfere with the use of it by the city for that purpose, remained in the original proprietor of the land, notwithstanding the absolute form of the condemnation. In this case, the Court considered the source of the power of eminent domain, confined the effect of the condemnation within the limits of lawful authority, and protected the rights of the property owner against an excess of power sanctioned by the judgment of confirmation.

In the case of *Western Md. R. R. Co. vs. Patterson*, 37 *Md.*, 125, a bill was filed to restrain proceedings under an

284          MARYLAND REPORTS.

C. & P. R. R. Co. and B. & O. R. R. Co. *vs.* Pa. R. R. Co. in Md.

inquisition, because the company was about to condemn the land in fee simple. The Court below ordered the injunction, but this Court reversed that order and dismissed the bill solely upon the ground that a Court of equity had no jurisdiction in that case to enjoin the proceedings while *in fieri*, for they expressly say, they "do not mean to affirm that there is no case in which a Court of chancery can interfere, to prevent the abuse of a power of condemnation under and by color of an Act of incorporation, whilst the proceedings are *in fieri*, and subject to be confirmed or rejected, but to insist that whilst the powers of the special tribunals to afford relief, are ample and *unexhausted*, the Court of chancery should not intervene upon a mere allegation that the corporation is exceeding its charter or violating the Constitution." I take this to be a clear expression of opinion, that a property owner after he has exhausted his remedy before the special tribunal, and the inquisition has been confirmed, may resort to a Court of equity for relief, if the condemnation be *ultra vires* the corporation, or in violation of the Constitution.

In the case of the *Baltimore & Havre de Grace Turnpike Co. vs. Union Railway Co.*, 35 *Md.*, 224, the railroad company was proceeding to condemn a crossing over the turnpike, in the construction of a branch road to form a lateral connection with the Philadelphia, Wilmington and Baltimore Railroad. The Turnpike Company filed a bill, while the proceedings were *in fieri* to restrain the attempt to make this crossing because it was *ultra vires*, and this Court so determined and ordered the injunction to be issued. That decision was placed upon the ground that the railroad Company, under its charter, had no power to build the lateral road. The company however claimed the power by virtue of their charter, and if by its true construction the charter did not give them any such power, "no better cause could be assigned against the confirmation of the inquisition." But this Court did

not hesitate to determine the question of power for itself, and to grant the injunction before the confirming Court had acted; and I cannot suppose the decision would have been otherwise even if the Circuit Court had confirmed. Nor can I perceive any distinction in reason or principle between a case where a railroad corporation has no power of condemnation generally, because it has no power to build the particular road for the use of which it seeks the condemnation, and a case where it has no power to condemn particular property because such property is protected from condemnation for the purpose of the road authorized to be constructed. In both cases the condemnations are equally *ultra vires*, in both the objection of want of power is equally open to the property owner before the special tribunal clothed with the power to confirm or reject, and in both the property owner is equally injured, his rights equally invaded, and his property taken from him without lawful authority.

To him the result is the same, and there is no justice in the distinction that would give him relief in equity in the one case, and deny it to him in the other. In both cases want of power in the condemning company is the basis of jurisdiction in equity, and I can see no objection to that jurisdiction that would apply in the one case and not in the other.

If I am right then in this review and interpretation of the cases, no decision of this Court stands in the way of now establishing the law in respect to these condemnations upon just and consistent principles. The doctrine which seems to me to be the true and just one, is that where a condemnation is *void*, either by reason of want of corporate power generally, or of power to condemn the particular property sought to be condemned, and the property owner has exhausted his remedy before the special confirming tribunal, the conservative powers of a Court of equity ought to be open to afford him relief. Why should

not this be established as the law of the State? All the authorities agree, and it is an elementary principle, that "the grant of a right to take private property for a public use, or to subject property already appropriated to a public easement, to other and distinct easements and uses, is the highest exercise of legislative power; and such a grant ought to be conferred in language clear and unequivocal." 35 *Md.*, 231. If such be the nature of the power, and it be not plainly granted in any given case, is it not the duty of this Court to be watchful in extending rather than restricting the *remedies* of property owners, against the wrongful seizure and appropriation of their property under color of such power? It is said, however, if this jurisdiction be sustained, the construction of railroads will be hindered and delayed. But I do not consider this a sufficient reason for denying the remedy. If such corporations are careful, as they ought to be, to keep within the limits of their charters, in the construction of their roads, I do not apprehend that any unnecessary delays will occur. But if a company has not obtained the requisite power from the Legislature, either to construct a particular road, or on a route which the company deems the most convenient, or to cross, or to condemn the property of other roads, why should they not be delayed until such power is granted? They have certainly no right to complain that they are enjoined by the Courts from committing *lawless* depredations upon private property, or upon the property or rights lawfully acquired, and held by other previously existing corporations. The decision in the case in 35 *Md.*, is too deeply rooted in reason and justice to be overthrown, yet delays may occur from frivolous bills filed under the doctrine which that case announces and establishes. It is just as possible for a vexatious bill to be filed, averring want of corporate power to build the particular road, as want of power to take particular property. Real instances of doubt in either case,

very rarely occur, but when they do, all must admit they present questions of the gravest importance. Indeed scarcely any of more importance can be presented for the consideration of a judicial tribunal. When such a case arises, the mere inconvenience to the particular corporation, of delay in the building of its road, must give way to the danger that would follow from sanctioning in any case, the exercise by any corporation, of ungranted powers of eminent domain, to the prejudice of the property rights of the citizen.

Entertaining these views, I am of opinion the bill makes a case for the interposition of a Court of equity, and that the preliminary injunction should be granted.