# THE UNION RAILROAD CO. OF BALTIMORE *vs.* THE CANTON RAILROAD CO.

*Termini of Railroad Company Incorporated Under General Law Need Not be at a City or Village—Right of Newly Incorporated Railroad Companies to Make Connection With the Union Railroad Co.*

Code, Art. 23, sec. 243, prescribes that upon incorporating a railroad company under the general law, the incorporators shall make a certificate specifying "the names of the places of the termini of the said road and the county or counties, city or cities through which such road shall pass;" and under sec. 245, such corporation is authorized to construct and maintain a railroad between the points named in the certificate, commencing at or within, and extending to or into any town, city or village named as the place of termini of such road. *Held*, that under this statute, it is not necessary that the railroad should have its termini at or in a city, town or village, but the intent of the law is that the railroad shall have its termini definitely ascertained so as to indicate its general direction and location.

Consequently, the certificate of incorporation of a railroad under this law is valid when it sets forth that the road begins at a point in Baltimore County adjacent to the place where the southern side of the right of way of the P., B. & W. R. Co. intersects the southwestern bank of B. River, running thence in a westerly direction to a terminus in said county near the point where Second street if extended, would reach the water front on the north side of Patapsco river.

The Act of 1870, ch. 412, sec. 10, incorporating the Union Railroad Co. prescribed that all railroad companies shall have the right on equal terms, to run their locomotives and cars over the track of said company and no discrimination in rates or tolls or otherwise, shall ever be made in favor of any company. *Held*, that the right so given to use the tracks of the Union Railroad Co. belongs to other railroad companies without being conferred upon them by express legislative grant, and belongs to railroad companies incorporated subsequently under the general law.

*Held*, further, that a railroad company incorporated under the general law, is entitled to an injunction to enforce its right to make connection with the Union Ralroad Co. by enjoining the latter company from hindering the former in making a connection and by requiring the Union R. Co. to give all requisite facilities in making and using such connection.

When one railroad company is entitled to make a connection with and use the tracks of another, an injunction is the proper remedy for the enforcement of the right, since an action at law for damages is inadequate to the exigency.

*Decided January 23rd, 1907.*

Appeal from the Circuit Court for Baltimore County (Duncan, J.)

The cause was argued before McSherry, C. J., Boyd, Pearce, Schmucker, Jones and Burke, JJ.

*Bernard Carter* and *Jno. J. Donaldson*, for the appellant.

*Arthur Geo. Brown* and *Edgar H. Gans*, for the appellee.

Opinion written by Jones, J., and ordered, after his death, to be filed as the opinion of the Court.

This is an appeal from an order of the Circuit Court for Baltimore County in equity granting a preliminary injunction upon a bill filed by the appellee against the appellant in which

it was alleged that the appellee is a corporation organized un-
der the Public General Laws of the State and in accordance
with the provisions of Art. 23, sub-title "Railroad Compa-
nies" of the Code; and that its chartered powers are shown
in a certified copy of its certificate of incorporation filed as an
exhibit with the bill. From this exhibit it appears that the
appellee was, according to its purport, incorporated under the
name of "Canton Railroad Company" for the purpose of con-
structing and operating a railroad in Maryland, "beginning at
the point and terminus in Baltimore County, in said State, at
or adjacent to the place where the southernmost side of the
right of way of the Philadelphia, Baltimore and Washington
Railroad intersects the southwesternmost bank or side of Back
River; running thence in a westerly and southerly direction,
and within the said county, to a point and terminus in the
said county at or near the point where Second street (Can-
ton) if opened and extended would reach the water front on
the north side of Patapsco river; with such branches from the
main line to other places within the limits of said county as
may be found necessary or convenient; all of the said railroad
and its branches passing through and being within Baltimore
County in the State of Maryland."

It is then alleged that the appellee is engaged in the actual
construction of its main line of railroad and for its corporate
purposes has acquired "certain rights of way and other prop-
erty, rights and privileges" by deed from the Canton Com-
pany of Baltimore; that the appellant (defendant below) is a
railroad corporation created and existing under the provisions
of the following Acts of Assembly, Act 1866, ch. 119, Act of
1867, ch. 74, Act 1870, ch. 412 and Act of 1872, ch. 119
(sec. 10 of the Act of 1870, ch. 412 and sec. 4 of the Act of
1872, ch. 119, being specially set out); that a portion of the
existing line of the railroad of the appellant "now in use and
in actual operation, is situated in Baltimore County east of the
eastern boundary of the city of Baltimore in a portion of the
county commonly known as Canton; that a portion of the
railroad of the appellee (plaintiff below) "which is ready for use

and actual operation, adjoins the said existing line of the rail-
road of the defendant" at a place pointed out in the bill where
the two railroad lines are immediately contiguous to each other;
that the appellee, through correspondence with the appellant,
which is fully set out in the bill and exhibits, has demanded of
the latter the right and privilege of connecting its (the appellee's)
road with that of the appellant and of making use of the rail-
road of the appellant to run its locomotives and cars over the
same—claiming the right to do this by virtue of sec. 10 of
the Act of 1870; and that the appellant had refused to permit
the appellee to so connect its road with that of the appellant,
or to use the appellant's road for the purposes indicated, and
has denied the legal existence of the appellee as a corporation.

The prayer of the bill is that the Court will declare, ad-
judge and decree that the appellee is a legally created cor-
poration, and as such is entitled to connect its tracks with
those of the appellant; that the appellant, its agents and serv-
ants, may be enjoined from hindering, delaying or obstructing
the appellee in making and lawfully using a connection with
the tracks of the appellant's railroad; that by a mandatory in-
junction the appellant may be required to give all requisite
facilities to the appellee in making and lawfully using such
connection with the road of the appellant; and for other and
further relief. The Court ordered that cause be shown by
the appellant (defendant below) why an injunction should not
issue as prayed.

As causes against the granting of an interlocutory injunc-
tion the appellant alleged that the averments of the bill were
not such as to warrant such an injunction; that the bill did
not show irreparable injury but that such injury as was
alleged could be fully compensated by damages in an action
at law; that even if the appellee was a lawfully created cor-
paration it is not such a railroad as is referred to in section 10
of ch. 412, Act of 1870 and sec. 4, ch. 119 of the Act 1872,
inasmuch as it was not in existence at the time of the passage
of said Acts; that said secs. 10 and 4 of said Acts refer to the
right of other railroads to run locomotives and cars on the

tracks of the appellant but nothing in them requires the appellant to make or allow another railroad company to make connection with its railroad, and on the contrary section 5 of ch. 119 of the Act of 1872 allows the appellant to exercise its own will as to making such connection; and that railroads incorporated under the General Railroad Law (Art 23, subtitle Railroads of the Code), as the appellee claims to have been, have no power or authority to connect with other railroads nor to run their locomotives and cars over the same.

After a hearing upon the bill and exhibits and the causes shown, the Court below granted an interlocutory injunction in both restrictive and mandatory form as prayed in the bill. From this action of that Court this appeal is taken.

Assuming the right of the appellee to connect its railroad with that of the appellant and to make use of the same, as proposed in its bill, it is quite obvious, that, in the nature of things, no adequate redress could be afforded by any action at law for a denial of such right. It would seem to need no argument to enforce the propriety of the means of redress here sought to be availed of. We may therefore proceed to consider other grounds of defense against the relief asked for by the bill that have been urged by the appellant.

It is denied that the appellee has corporate existence because as alleged, its certificate of incorporation does not comply with the provisions of the general law relating to corporations existing at the time of its incorporation (secs. 159 and 161, Art. 23, Code of 1888—now secs. 243 and 245, Art. 23, Code 1904), in regard to describing and fixing the termini of its railroad. The first of these sections prescribes that in forming a corporation for the purpose of constructing a railroad the persons so incorporating shall make, in the manner therein required, a certificate which, among other things, shall specify "the names of the places of the termini of said road, and the county or counties, city or cities, through which such road shall pass;" and the other that "said corporations shall be authorized to construct and maintain a railroad with a single or double track, with such side tracks, turnouts, offices

and depots, as they may deem necessary, between the points named in the certificate, commencing at or within and extending to or into any town, city or village named as the place of termini of such road and construct branches from the main line to other towns or places within the limits of any county through which said road may pass."

It is argued that in the provisions of the statute for the formation of railroad corporations just referred to the legislative intent was "that the termini should be existing *named* places and that the known *names* of these places should be *specified* in the certificate; and further, that such named places should be 'town, city or village,'" The language of the provisions in question may be somewhat lacking in clearness, but the question here is not one of philological accuracy in the expressions employed therein but of legislative intent upon a view of the whole statute and of the object of it. This Court has said that the statute in question is of remedial character and to be liberally construed. *Piedmont & Cumb. Ry. Co.* v. *Speelman,* 67 Md. 260. Its object is to promote and facilitate the organization of corporations for the building of railroads and supplying means of transportation as the necessities and convenience of any community in the State and its industrial and commercial development may require. Where doubt may be suggested as to the construction of the law it ought to be resolved with a view of bringing the practical operation of the law into harmony with its purpose.

There is no good reason apparent for giving to the provisions of the Code in question the meaning and effect that a railroad can only have termini at or in a city, town or village. It may well, and does, occur that conditions exist to require, or make it convenient to a community or a particular locality, to have railroad facilities provided, where it would be inexpedient to so fix the termini. Accordingly in practice, it is believed, in forming corporations of the character of the one here in question the construction of the law applying to their formation which is here insisted upon has not prevailed. In requiring that the termini shall be specified in its act of incor-

poration it would seem that the only reasonable intent to be imputed to the law is that the railroad shall have such termini definitely ascertained and fixed so as to indicate its general direction and location. This would be sufficient in a special charter conferred directly by Act of the Legislature. Why should it be otherwise in a charter authorized to be formed under a general law having the object which has already been indicated and intended only to obviate the necessity of a special charter in conditions making the incorporation of a railroad company expedient or desirable? Where the Legislature has not in express terms indicated that there is to be a difference between a special charter and one authorized by the general law in the regard mentioned the Court ought not to be astute in finding one where there is not apparent a reason therefor. The law does not in terms require the termini of a railroad incorporated under the general law to be at or in a town, village or city; and while it does require the "names of the places of the termini" to be specified the reasonable import of this language is that it is only the equivalent of requiring that the places or points of the termini shall be definitely designated and fixed. When this is done the requirement of the law as to the certificate has been complied with; and as it is the certificate which confers the corporate powers a compliance with the requisites for that brings the corporation into existence.

The succeeding provision, which has been recited, does not relate to the requisites of the certificate, but to the exercise of the powers thereby conferred, in constructing the projected railroad "*between the points named in the certificate.*" It imposes no restriction upon the corporation in respect to the location of the termini of its railroad but expresses the powers of the corporation in constructing the road to or within any town, city or village when the points of the termini may commence at or extend into such town, city or village. In *P. & C. R. R. Co.* v. *Speelman, supra,* this Court had under consideration a charter of a railroad company organized under the general incorporation law which, in its description of the termini of the

projected railroad, was open to the same criticism that is made in that regard, of the charter here in question. The question now being considered was not distinctly raised in that case. But the validity of the charter, there involved, was drawn in question; and the same was pronounced valid without a sug_gestion that it was defective in its description of the termini. That the Court had in mind this feature of the charter in passing upon its validity appears from expressions that fell from the Court in the course of the majority opinion; where it was said: "There is no pretense that the termini of the road are not designated with reasonable certainty. The charter only calls for one town, Westernport, and to that the road now runs." In respect to the town of Westernport mentioned in the foregoing quotation the charter had not described it as a terminus of the road but the road was to run "through or near to" it. Again there occurs in the opinion the following: "The law of this State requires the termini to be fixed in this State with reasonable certainty, and the cities (if any) through or near which the road is to pass. We think the termini have been fixed in this charter, good faith has been observed, and the towns named." It may be said therefore that this Court has already indicated its approval of the views herein expressed as to the objections urged to the validity of the charter here in controversy based upon the alleged defective description of the termini of the railroad of the appellee. We find no support for the contention that the charter of the appellee is invalid.

The appellee being, then, an existing corporation has it the right to connect with and use the railroad of the appellant as it claims it has? Upon this branch of the case there has been a good deal of discussion and citation of authorities. The question, however, would seem to depend on what the Legislature has done; what is the intention manifested in this; and has it acted within its powers. This in fact is illustrated in the authorities cited. Where these show analogous questions have been raised they have been treated as matters of construction of statutes affecting the particular cases. The Acts

incorporating the appellant are specifically referred to in the bill. Sec. 10 of the Act of 1870 therein set out is as follows: "The time-table and rates of charges for tolls and freight shall be under the sole control and management of the president and directors of said company, or a majority of them, but all railroad companies shall have the right, upon equal terms, to run their locomotives and cars over the tracks of the said company, and no discrimination in rates of toll, or in any other respect, shall ever be made in favor of any company, provided, that the said Union Railroad Company shall not charge for the use of the road a sum exceeding the rate of five cents per mile for tolls for use of said road for every mile or proportionate part of a mile, and for passengers a sum not exceeding the rate of ten cents per passenger per mile, or proportionate part of a mile for each passenger." Sec. 4 of the Act of 1872 also set out in the bill provides "that nothing contained in any of the Acts of Assembly relating to the said company shall be construed as preventing the said company from using its own locomotives and cars upon its road, on equal terms, however, with other companies having the right to run their locomotives and cars upon the same." . Sec. 5 of the last-named Act provides "that the said company may construct all switches and sidings or turnouts from the main road * * * as may be necessary to enable it to shift trains to and from other railroads with which it may now or hereafter come in contact * * between the termini now fixed by the Act incorporating the said company, and any Act amendatory of or supplementary thereto."

It would seem there could be no doubt about the intention of the Legislature in the foregoing provisions. In express, unambiguous and unqualified terms it has said that *all* railroad companies *shall* have the right to run locomotives and cars over the railroad of the appellant; provides that the appellant shall not be prevented by anything in the provisions from using its own locomotives and cars on its road on equal terms with other companies "*having the right* to run their locomotives and cars upon the same;" and gives to the appellant the power to

construct the necessary switches, sidings or turnouts to give operative effect to the "right" so given to "all railroad companies." Plainly it was intended to impose upon the appellant a duty with respect to allowing the use of its road to other railroads, and to give to it the necessary power to meet the requirements of the duty so imposed.

But it is argued on behalf of the appellant that though there may be a duty imposed upon the appellant in the regard mentioned, as the servient corporation, no right has been given to and no power conferred upon, the appellee, as the dominant corporation, to make connection with, and use of the railroad of the former because the appellee was incorporated under the general incorporation law which contains no express grant of right or power to railroad corporations incorporated thereunder to connect with and make use of other railroads. If however in the provisions in the appellant's charter which have been set out, the Legislature designed, not only to impose a duty on the servient railroad company, but to create a right for other railroads in a dominant capacity, it is not perceived why such right has not been so conferred. A reading of the statutes original and amendatory and supplementary, relating to the incorporation of the appellant makes it evident that one of the purposes of its existence was the use to be made of its railroad by other roads. This was made a feature of its original charter and has been preserved, and more distinctly developed, in the amendments thereto. The grant therein, therefore, to other corporations of the right to use its railroad was not an incongruous provision but one germane to, and consistent with, the objects of the incorporation. It can hardly be questioned that the Legislature could incorporate a railroad company for the express purpose of building a railroad for use by other railroads in getting their freight and the articles of traffic to tidewater in conditions that would make it expedient or desirable to do so. There can be no difference in principle between a railroad company incorporated solely for such use and one incorporated with that as one of its purposes.

In the original charter of the appellant the right to use its

road was given only, and in express terms, to the Western Maryland and the Northern Central Railroads. Assuming that these roads had, at the time in their respective charters no express provision giving them authority to connect with, and run their cars over, the railroad of the appellant, it would be refining over much to say that, notwithstanding the distinct requirement in appellant's charter that it should yield to them such right, they would still have to go to the Legislature to ask for express authority to avail of it. In the subsequent amendment of the charter of the appellant the Legislature extended the right of user of its road to all railroads. The inference cannot be avoided, in the absence of anything to qualify the right so conferred, that it was intended by the Legislature that such right should be given to all railroads as it had been held previously by the two railroads expressly named in the original charter. There appears no intention to take away from these railroads the right they had at the time of the amendment nor to modify it or attach to it any new conditions. They can only now have the right, as it previously existed, by the provision in the amendment which confers it upon *all* railroads. If they take or retain the right in question under that provision then necessarily all other railroads must take it under the same provision. There is no question of right of contract here making the right in question one of mutual arrangement as to terms and conditions dependent upon the consent and volition of the parties in respect thereto. The right is one conferred directly by the law upon the terms therein prescribed and to be yielded upon demand to parties entitled thereto to be exercised by them upon the terms so prescribed.

In making its application for the making of a connection with appellant's road the appellee requested that the proper means of making such connection be either supplied by the appellant or that the appellee be permitted to do this. As has been seen the power is conferred upon the appellant to construct all necessary appliances to enable such connection to be made. This power can properly be exercised by having such

means of connection actually supplied by the appellant, or by arrangement by which the appellee can do this.    In case of *Turnpike Co.* v. *Union R. R. Co.*, 35 Md. 224, this Court had before it the question of the right of the appellant here to construct a lateral road to connect its road with that of the Philadelphia, Wilmington and Baltimore Railroad Company, and held that the appellant had not the power conferred under its charter to construct the road there projected.    In the course of the opinion in the case there appeared, *arguendo*, this unqualified language: "Now what is the right granted by the 10th section of the Act of 1870?   It is that all *railroad companies* shall have the right upon equal terms to run their locomotives or cars over the railroad of the appellee.   By its original charter, Act of 1866, ch. 119, this right was conferred only upon the Northern Central and the Western Maryland Railroad Companies, but the charter was amended by the Act of 1870, and all railroad companies were authorized to use its tracks."   The Court then goes on to say that the question there was "not whether these railroads are authorized to build lateral roads connecting with the railroad of the appellee, as incident and necessary to the beneficial enjoyment of the right to use the tracks of the appellee, but whether this section confers upon the latter the power to build lateral roads in every direction connecting with all railroads running to Baltimore City."

This language, used in the unqualified way it was, has significance and indicates that the view taken by this Court then of the effect of the Act of 1870, section 10, coincides with the view which we have here indicated.   The decree of the Court below was in accordance with the view we have herein expressed and will be affirmed.

*Decree affirmed with costs to the appellee and cause remanded.*