THE WESTERN MARYLAND RAILROAD COMPANY *vs.* ABRAHAM B. PATTERSON.

*Special and exclusive Jurisdiction of the Superior Court, and the Circuit Courts for the Counties, as Courts of Law, to hear and determine all questions arising upon an application to Confirm or set aside an Inquisition for the Condemnation of Land for the use of a Railroad.*

A bill of complaint, filed in the Circuit Court of Baltimore City, charged that the Western Maryland Railroad Company, by virtue of their original charter and the supplements thereto, had proceeded to have condemned a portion of the land of the complainant lying in the city of Baltimore; that an inquisition had been taken, and with the official certificate of the sheriff of his proceedings in relation to the matter, had been returned to the Clerk of the Superior Court; that it appeared by the inquisition that the land of the complainant had been condemned for the use and occupation of the railroad "in fee simple;" that it did not appear on the face of the inquisition, for what purpose the land so condemned was designed to be used; nor did the inquisition specify or declare that it should be used, and was condemned to be used, for construction, or any purpose for which the railroad company was authorized to condemn land; but on the contrary that the inquisition declared that damages were awarded for the use and occupation of the land in *fee simple,* by the railroad company; and that the complainant was advised that if the inquisition should be confirmed, and he should receive the damages, he would be forever precluded from contesting the right of the company to exercise over the land, the right of a fee simple proprietor. The bill also charged that the condemnation of the land in fee simple was in direct contravention of the charter of the company and the Constitution of the State; that there was no authority to condemn any other estate than an easement, and the attempt to condemn the land in fee simple was altogether

*ultra vires;* that the complainant was advised that the Circuit Court had ample jurisdiction to prevent by injunction the attempted exercise of powers which were altogether void of any foundation or justification in the charter of the company or the laws of the State. The bill prayed for an injunction to restrain the railroad company from further proceedings for the condemnation of the land; from asking of the Superior Court confirmation thereof, and from exercising any right over the land until the further order of the Court. HELD:

That the Circuit Court of Baltimore city had no jurisdiction to enjoin proceedings *in fieri* under the charter of the railroad company, for objections apparent upon their face, or otherwise; the Superior Court having special and competent authority to adjudge and determine them.

And for the same reason, the Circuit Courts generally, have no such jurisdiction.

APPEAL from the Circuit Court of Baltimore City.

The appeal in this case is from an order of the Court below, granting an injunction upon a bill filed by the appellee against the appellant. The allegations of the bill are sufficiently stated in the opinion of this Court. The case was heard in the Court below on the bill and exhibits, and the answer of the appellant was not filed until after the injunction had been issued.

The cause was argued before BARTOL, C. J., STEWART, BOWIE and BRENT, J.

*William A. Fisher* and *Arthur W. Machen,* for the appellant.

The first objection made to the inquisition is that it attempts a condemnation of the *land in fee simple,* and that if the appellee accepts the amount awarded by the jury, he will be estopped to contest the right of the appellant to an absolute fee simple estate in the land. If such an attempt had been made, the condemnation would not be void, inasmuch as there is full power in the appellant to condemn such an interest as may be necessary for its

use: "The condemnation" (would) "confer" (upon the company,) "in perpetuity, the use and occupation of the" (land) "for the purposes mentioned in the Act, but leave in the land owner all such use of it as did not injuriously interfere therewith." *Kane vs. The Mayor, &c., of Baltimore,* 15 *Md.,* 250.

The language of the Act of Assembly, under which the condemnation was made against Kane by The Mayor and City Council, is the same as that found in the Act under which the appellant acted.

The position taken in *Kane vs. The Mayor, &c., i. e.* that even if a fee simple is sought to be condemned it will be limited to being co-extensive with the public use, is confirmed by the best considered cases in other Courts. *Mouchet vs. Great Western Railway,* 1 *Eng. Railway Ca.,* 575; *The People vs. White,* 11 *Barb.,* 28; *Hooker vs. Utica Turnpike Co.,* 12 *Wendell,* 371; *Giesy vs. Cin. & Zanesville R. R. Co.,* 4 *Ohio N. S.,* 325, 327, 328; 1 *Redfield on Railways, sec.* 69, *subs.* 12, *p.* 253 *of* 3*d Ed.*

It is entirely immaterial whether the estate acquired be treated as a qualified fee simple in the land, or as an easement merely. Many cases treat the estate as a qualified fee simple, determinable when the public use ceases. *The People vs. White,* 11 *Barb.,* 28; *Giesy vs. Cin. & Zanesville R. R. Co.,* 4 *Ohio N. S.,* 325, 327, 328; *Hooker vs. Utica Turnpike Co.,* 12 *Wendell,* 371; *Munger vs. Tonawanda R. R. Co.,* 4 *Comstock,* 349; *Raleigh, &c. R. R. vs. Davis,* 2 *Dev. & Bat.,* 467, 468; *Pinchin vs. London & Blackwall Railway Co.,* 5 *DeG. M. & G.,* 862.

The words "in fee simple," inserted as descriptive of the extent of interest taken, are for the benefit of the land owner. They insure his being allowed full value for his land. Any more qualified or restricted description of the interest required would have tended to mislead the jury, and thereby take from the full compensation to which the owner was entitled. The whole matter is

nothing but a thin question of definition; in substance nothing was sought to be taken but an use and occupation, in the nature of an easement. The interest acquired is so described in many of the cases. *Shelford on Railways*, 7; *Hazen vs. Boston & Maine R. R. Co.*, 2 *Gray*, 580.

The statute requires that the inquisition shall describe the property taken, the boundaries of the land, and the duration of the interest. The interest acquired is an use and occupation of the described land for railroad purposes. The metes and bounds of the land over which the use extends are given. The duration of the interest is expressed by the statement that it is unlimited, *i. e.* in fee simple. No form of expression more appropriate for the description of the *easement* can be devised than the words "use and occupation" employed in the inquisition.

Assuming that the interest is to be treated as an easement, the same estates exist in an easement as in the land itself, and it is perfectly correct to describe an estate in fee simple in it. 1 *Washburn on Real Property*, 56; *Washburn on Easements, &c.*, 5; *Ex-parte Coburn*, 1 *Cowen*, 568.

It is conceded that we may acquire an interest in the land "in perpetuity;" this is not a technically correct mode of expression, while that adopted is well known. The easement (regarding the interest as an easement,) certainly has all the essential elements of a fee simple; inasmuch as *so long as it is employed for the public use for which it was taken,* it will pass to successors and assigns within the limits authorized by the charter of the appellant. *Erie &c. R. R. Co. vs. Casey*, 26 *Penna. State*, 307.

It is argued by the appellee that if he accepts the amount awarded under the condemnation, he will be estopped from denying that the appellant has acquired

an absolute fee simple estate in the land. No such estoppel can arise. The appellant is *incapable* of taking an interest more extensive than required for the public use, (15 *Md.*, 250,) and the estoppel would be limited by the capacity of the grantee to acquire.

If any estoppel arose at all, it would be subject to such construction as has been put upon such inquisitions, and under the decision in Kane's case, the appellee could not be concluded from asserting an estate in the land, subject only to such interest as might be necessary for the use of the appellant. *The People vs. White*, 11 *Barb.*, 27–29.

In Kane's case the question of estoppel was distinctly presented and the Court held that Kane was not concluded although he held under a grantor who had *accepted* the amount awarded, and the inquisition purported to pass a fee simple estate in the *land*.

It is also insisted that the inquisition is void, because it does not state that the land is required for construction, or for any other purpose authorized by the charter of the appellant. The inquisition in this case, especially when connected with the warrant, does state that the land is required for construction, but it is wholly unnecessary that such statement should occur in the inquisition. The statute prescribes what the inquisition shall contain, and nothing more need be stated. It is an "use and occupation" which is taken for a railroad company, and no application of the land can be made except for purposes authorized by the charter. 1 *Redfield on Railways, sec.* 69, *sub-sections* 12 *and* 14.

The oath administered to the jurors, and set out in the inquisition, necessarily implies that the land is to be used for railroad uses, and the appellant would be estopped by that alone from making any application of it for other purposes, and equity would interfere if it were attempted.

9                    v. 37

The inquisition is part of a proceeding which commences with the warrant and ends in a judgment for the land owner against the railroad company, after the confirmation of the inquisition by an order of the Court; the whole constitute one record, and the inquisition is to be read with reference to the warrant, with which it is connected by the sheriff's return, and to which on its face it refers. *Tidewater Canal Co. vs. Archer*, 9 *Gill & Johns.*, 505, 506, 507, 508, 517; *Shelford on Railways*, secs. 274-5, *p.* 205; *Taylor vs. Clemson*, 2 *Ad. & Ellis N. S.*, 1030; *Jean vs. Spurrier*, 35 *Md.*, 110; *Taylor vs. Clemson*, 11 *Clark & Fin.*, 610.

The land could be used for any rail road uses of the appellant, but for no other purpose. *Hamilton vs. Annapolis and Elk. R. R. Co.* 1 *Md.*, 553; *Dean vs. Sullivan R. R. Co.* 2 *Foster*, 316; *U. S. vs. Harris*, 1 *Sumner*, 21.

*Bernard Carter* and *S. Teackle Wallis*, for the appellee.

Under its charter and the fundamental law of the State, the appellant is authorized to acquire by condemnation, not a fee simple estate or interest in the land of the appellee, but only an easement in a right of way over the land of the appellee; and the title to the soil vested in the appellee under the deed by which he acquired title, would not be at all divested or disturbed by any right which the appellant lawfully acquired by condemnation in said land, such right leaving the fee simple title in the appellee, burdened with such a servitude as is requisite to enable the appellant to construct and maintain its rail road over said land.

No greater or other dominion can be acquired by the appellant, than the simple right to use the land for the legitimate purposes of the construction and maintenance of its railway upon said land; and the appellant, therefore, is not authorized to acquire in said land such rights of user as an owner thereof in fee simple would have.

The fee simple under a legitimate proceeding for condemnation remains in the land owner. *Kane vs. Mayor & C. C. of Balt.*, 15 *Md.*, 240; *Blake vs. Rich*, 34 *N. H.*, 282, 288; *Brainard vs. Clapp*, *(Shaw, C. J.,)* 10 *Cushing*, 8; 1 *Redfield on Railways*, 247, 251, *(section 7, chapter 11;) Susquehanna Canal Co. vs. Bosley*, 3 *Bland*, 67.

The inquisition of the jury in the case at bar does purport on its face to condemn for the appellant a greater estate and interest in the land of the appellee than under the charter of the appellant, and the laws of the State of Maryland, the appellant is authorized to acquire by condemnation; and does, in fact, condemn for the appellant the right to use and enjoy the land of the appellee, embraced within the lines of condemnation; in the same manner that the owner in fee simple would have the right to use and enjoy the same.

The 2d section of the Act of 1872, ch. 71.—(Amended charter of appellant,) requires, that the "inquisition shall in all cases describe the *duration or quality of the interest* in the land condemned, *valued for* the company."

In the inquisition in question, it is said that the jury say, "we value the damages which the owner of said tract of land has sustained, or will sustain, *by the use and occupation of the same in* Fee Simple *by the said railroad company*, at the sum of $13,000."

It was held by Baltimore County Court, in *Balt. & Susq. R. R. Co. vs. Compton, et al.*, 2 *Gill*, 29, that it is necessary in order to sustain an inquisition under a charter similar in this respect to that of the appellant, that the *inquisition* should set forth, that the land was condemned for the use of the company for *construction*, and that this would be sufficient, but the statement of that fact in the *warrant* of the justice of the peace, does not comply with the requirement of the law that it should appear in the *inquisition*. The inquisition in the case at bar does not contain any statement that the land

condemned by it is wanted by the railway company for the construction thereon of its railroad. Under the decision in 2 *Gill*, 29, this defect in itself is fatal to the inquisition.

If in accordance with the decision in 2 *Gill*, 29, the inquisition had set forth that the appellee's land was wanted by the railroad company for the *construction* of its railroad, and that the jury had valued the damages which the appellee would sustain by *such* use and occupation, then it would be clear that the railroad company was vested only with such rights over the land as were necessary for the construction and maintenance of the works it is authorized under its charter to construct; and the rights thus given to it by the language of the inquisition would be exactly commensurate with these which the railroad is authorized to acquire by condemnation.

If the inquisition had been in the language thus suggested, and thus have condemned the land for the construction thereon of the railroad of the appellant, both parties, the land holder and the railroad company, would have been referred to the principles of law established by the decisions of the Courts in this class of cases, for the ascertainment of their respective rights in the property thus condemned. Such language in the inquisition would have vested all proper authority over the land in the railroad company, and all such rights as are necessary to be enjoyed for the prosecution of its enterprise, and at the same time would have divested the land owner of no estate or right in the property save such, the exercise of which would be inconsistent with the proper prosecution of the enterprise of the railroad company. *Brainard vs. Clapp*, 10 *Cush.*, 8.

In the inquisition in question, however, no such language is to be found; but on the contrary, the inquisition, omitting the language thus held to be the proper language, substitutes other language of an import alto-

gether at variance with the language above referred to, and with the due ascertainment of the respective rights of the appellant and appellee, under the charter of the former and the law of the State.

According to the inquisition now under review, the rights acquired by the railroad company in the land of the appellee, are not those necessary for the construction thereon of the railroad of the appellant, but the *use and occupation* of said land in FEE SIMPLE.

What right or title then is given by the words "use and occupation of the land in FEE SIMPLE by the railroad company? The plain, natural and ordinary meaning of these words, if not their only meaning, is to vest an absolute estate in fee simple in the company.

Is not the purport of these words the same as the words of the usual form of the *habendum* in an ordinary deed conveying land in fee simple? What is the difference between "to have and to hold to the use of the said railroad company in fee simple," and the words "use and occupation in FEE SIMPLE by the said railroad company?" Suppose there had been inserted in the *habendum* in a deed between private individuals the words to "use and occupy the said land in fee simple," would not the Court say that a fee simple passed?

Though the company has no power to condemn the estate which they have attempted to condemn by this inquisition, yet if the appellee allows it to be confirmed and receives the money, he is estopped from setting up the unconstitutionality of the condemnation, and the railroad company would be the owner in fee simple. *State vs. B. & O. R. R. Co.*, 34 *Md.*, 364; *Baker vs. Braman*, 6 *Hill*, 48; *Embury vs. Conner*, 3 *Comstock*, 521; *Dodge vs. Burns*, 6 *Wisconsin*, 520; *Burns vs. Mil. & Miss. R. R. Co.*, 9 *Wisconsin*, 456; *Hitchcock vs. D. & N. R. R. Co.*, 25 *Connecticut*, 519; *Cooley on Constitutional Limitations*, 539, 540, 541. The jurisdiction of the

Circuit Court on the case made by the bill and exhibits, is clearly established by the following decisions of this Court: *Holland vs. M. & C. C. of Baltimore,* 11 *Md.,* 197; *W. Md. R. R. vs. Owings,* 15 *Md.,* 199; *Mayor, &c., of Balt. vs. Gill, et· al.,* 31 *Md.,* 395; *Mayor, &c. of Frederick vs. Groshon,* 30 *Md.,* 436.

BOWIE, J., delivered the opinion of the Court.

The right of eminent domain being an exercise of extreme power, upon the principle of public necessity, all the restraints imposed by law to prevent its abuse should be scrupulously enforced.

For more than half a century, this State yielding to the spirit of enterprise which animated her citizens, and their desire to develope her resources by internal improvements, has delegated this power with liberal hand to various corporations; prescribing in the several Acts of incorporation, the mode of acquiring private property for the several purposes contemplated by their charters.

In all these charters, as in the amended charter of the appellants, the corporations are authorized to agree with the owner or owners of any land, &c., which may be wanted for the proper construction or repair of said railways, or any of their works, for the *purchase, use, occupation,* or diversion of the same; and if they cannot agree or the owner for any cause be incapable of contracting, application is directed to be made to a justice of the peace, for a warrant to be directed to the sheriff, commanding him to summon a jury, (which being sworn in manner and form as prescribed,) are required to estimate and determine the damages sustained by the owner, and to reduce their inquisition to writing, and sign and seal the same; and it shall then be returned to the clerk of the Superior or Circuit Court of the county, to be filed by the clerk, and confirmed by the Court at the next

term or session, if no sufficient cause to the contrary be shown ; and when confirmed, shall be recorded, but if the same be set aside, the Court shall direct another inquisition to be taken in the manner above described.

The inquisition shall in all cases describe the property taken, or the bounds of the land condemned, and the duration or quality of the interest in the same, valued for the Company ; and such valuation, when paid, or tendered to the owner or owners, his, her, or their legal representatives, shall entitle the Company, to the *estate and interest* thus valued, as if it had been legally conveyed by the owner, &c.

By these and similar provisions, a specific mode of proceeding is prescribed, and a special tribunal established for the purpose of supervising the exercise of the power of eminent domain, and hearing and determining all questions which can arise upon the application to confirm, or set aside the inquisition.

Whether these regulations are sufficient to protect the rights of all persons in all cases, it is not for the Courts to enquire ; but if there is any deficiency, it is the province of the Legislature which delegated the power, and erected special tribunals, or conferred the jurisdiction on the Circuit Courts to supply the defect.

It is remarkable that notwithstanding the great value of the property often sought to be condemned, and the important legal questions incidentally involved, the proceeding is not in form, " *in personam,*" but " *in rem*" ; no summons or notice to the owner is in most cases provided ; no day in Court assigned to the parties interested ; and no appeal allowed from the final action of the Circuit Court on the inquisition.

Hence the whole system of condemnation of private property for public uses in this State, has been matured by the practice and decisions of the County or Circuit Courts.

No case has been cited, and we believe that in the practice of this State not an instance exists, in which an appeal has been allowed, or the proceedings of those Courts while "*in fieri*" have been arrested or reviewed by any other judicial authority.

The object of the bill in this case is to procure an injunction, restraining the Western Maryland Rail Road Company, from proceeding any further with the proceedings instituted by them for the condemnation of the appellee's property: *and from asking of the Superior Court of Baltimore City, confirmation thereof* and from exercising any right over the land, until the further order of the Court.

The proceeding is so anomalous, that the first inquiry which suggests itself is, whether a Court of Equity has jurisdiction in such a case.

The allegations upon which the intervention of the Court is sought, consist of supposed defects, for the most part apparent on the face of the proceedings complained of, and which are yet pending in a Court of competent jurisdiction.

The bill charges that the appellants by virtue of their original and amended charters have procured a warrant to be issued to the sheriff of Baltimore City, to summon a jury to condemn a portion of the land of the appellee, within the limits of the city ; which jury convened on the 3rd of May 1872, condemned the land described, valued the damages and signed and sealed their inquisition ; which, together with the official certificate of the sheriff of his proceedings in relation to said matters, were returned by the sheriff to the Clerk of the Superior Court, a copy of which is filed with the bill.

It is alleged that it appears by the said inquisition, that the *land* of the complainant therein described, has been condemned thereby, for the use and occupation of the appellants "in fee simple."

That "it does not appear on the face of said inquisition, for what purpose said land so condemned is designed to be used, nor does the said inquisition specify or declare that it shall be used and is condemned to be used for construction, or any purpose for which the appellants are authorized to condemn land; but on the contrary, said inquisition declares that damages are awarded for the use and occupation of said land in fee simple, by said railroad company, and if the said inquisition should be confirmed, and the complainant receive the damages, he would be forever precluded from contesting the right of the company, to exercise over the land, the right of a fee simple proprietor.

The complainant charges that the condemnation of the land in fee simple, is in direct contravention of the charter, and the Constitution of Maryland; that there is no authority to condemn any other estate than an easement, and the attempt to condemn the land in fee simple is altogether "*ultra vires.*"

That the Court has ample jurisdiction to prevent, by injunction, the attempted exercise of powers which are altogether void of any foundation or justification in the charter of the company, or laws of the State.

These objections, if well taken, would be as available if made to the confirmation of the inquisition in the Circuit Court, as in a Court of Equity.

There is no necessity for an injunction, (which is an extraordinary preventive power,) when the Courts, peculiarly vested with authority over the subject, are competent to relieve, and it is a sufficient ground for refusing it, that the complainant has an ample remedy at law.

The fifth point of the appellee's brief assumes, that the question of jurisdiction, needs for its determination, a simple reference to the decisions of this Court, and refers to *Holland vs. Mayor & C. C. of Baltimore*, 11 *Md.*, 197; *W. Md. R. R. vs. Owings*, 15 *Md.*, 199; *Mayor & C. C.*

*of Baltimore vs. Gill*, 31 *Md.*, 395 ; *Mayor, etc. vs. Groshon*, 30 *Md.*, 436.

The first case was that of an injunction to restrain the city authorities from selling the complainant's lot, for a paving tax, which it was alleged was illegally and irregularly levied.

The injunction was sustained, on the ground that the debt (or tax) was not due, and to prevent the owner of the land from being vexed by a multiplicity of suits, "to save him from an annoying, protracted and expensive litigation." There were no other means of relief. No special jurisdiction was open where the wrong, if any, could be redressed.

The proceedings necessary to fix the complainant's liability to the tax were consummated, and the property actually advertised for sale ; if a Court of Equity had not intervened, the complainant would have been without remedy.

The case in 15 *Md.*, 199, was an injunction to restrain the Western Maryland Railroad Company from making its road over the land of the complainant, before paying, or tendering compensation, for the use of the land, as provided in Article 3, section 46, of the Constitution of the State

The violation of this constitutional inhibition, was considered sufficient to warrant the interposition of the Court, without regard to the question whether the damage complained of was irreparable or not ; but, in this case, the inquisition had been finally ratified. The injunction was founded on matter subsequent.

The case of the *Mayor of Frederick vs. Groshon*, 30 *Md.*, 436, was one in which the corporation proceeded to exercise the authority to condemn property, under a law which had been repealed ; of course, there could be no question of jurisdiction in such a case.

The repeal of the law swept away all the machinery, by which its proper exercise was limited and controlled.

Its only parallel would be an attempt on the part of an association, or individuals, to appropriate the private pro perty of another without a charter.

So, in the case of the *Mayor & C. C. of Baltimore vs. Gill*, 31 *Md.*, 395, the injunction rested upon the want of constitutional power of the corporation to contract a debt or loan, having no analogy whatever to the case before us.

The distinction between the cases where the proceedings are void, for want of authority, and irregular and defective because of some omission or neglect, which may be cured *pendente lite*, or taken advantage of whilst "*in fieri*," is broadly taken and sustained in the case of *Page vs. Mayor & C. C. of Baltimore*, in the opinion of this Court, in 34 *Md.*, 564, 565.

In the former class of cases, it was held a Court of Equity had jurisdiction, but in the latter it had none. *Vide* 6 *Gill*, 402; *The Mayor & C. C. of Baltimore vs. Bouldin*, 23 *Md.*, 375.

In 6 *Gill*, 402, Judge Dorsey said: "To persons aggrieved by the proceedings of the Commissioners, in cases like the present, the legislative enactments upon the subject have provided the tribunal and the means of redress, and there only can it be successfully sought."

Although the appellants' counsel, under the circumstances of this case, seem to consider the question of jurisdiction unimportant, preferring to have a decision on other points, to avoid what they call ruinous delay; we think our duty requires we should dispose of it "*in limine*," to prevent all judicial authority from being drawn into a Court of Chancery.

There is, in our opinion, no jurisdiction in the Circuit Court of Baltimore City, or the Circuit Courts generally, to enjoin proceedings "*in fieri*" under the charters of the appellants, for objections apparent on their face, or otherwise; the Circuit Courts having special and competent authority to adjudge and determine them.

---

We do not mean to affirm, there is no case in which a Court of Chancery may interfere to prevent the abuse of a power of condemnation, by color of an act of incorporation, whilst the proceedings are "*in fieri*," and subject to be confirmed or rejected ; but to insist, that whilst the powers of the special tribunals to afford relief, are ample and unexhausted, the Court of Chancery should not intervene, upon a mere allegation that the corporation is exceeding its charter, or violating the Constitution.

The order of the Circuit Court of Baltimore City granting the injunction will be reversed, and the bill dismissed.

*Order reversed, and*
*bill dismissed.*

