*Decree affirmed, and*<br>*cause remanded.*

(Decided 12th July, 1882.)

---

# Isaac Brown *vs.* The Philadelphia, Wilmington and Baltimore Railroad Company.

*Finality of the Judgment of the Circuit Court upon an Inquisition of Condemnation—Appeal.*

Proceedings were taken by the P., W. & B. Railroad Company under the provisions of the Act of 1853, ch. 138, to have condemned such portion of the land of B. as was necessary for the use and operation of its road. The inquisition was regularly executed and returned into the Circuit Court for Cecil County, for confirmation or rejection; B. appeared in Court and objected to the ratification of the inquisition, and insisted, as ground of objection to the inquisition, that inasmuch as the bridge and the road had been completed, within the meaning of the Act of 1853, ch. 138, the Railroad Company had no longer any right or power to condemn the land for the use and occupation of its road, against his con-

sent. The Court overruled that and all other objections to the inquisition, and finally ratified and confirmed it. B. thereupon filed his bill in equity for an injunction to restrain the Railroad Company from using the tract of land which had been thus condemned; and the sole ground of relief set up in the bill was, that the attempted exercise of the power of eminent domain in condemning the land of the complainant for the use of the Company's road was *ultra vires*, and therefore void. The Court refused the injunction and dismissed the bill. On appeal by B. from this action of the Court, it was HELD:

1st. That the judgment of the Circuit Court in ratifying the inquisition of condemnation was final and conclusive, and could not be questioned by any person who was a party to the proceeding.

2nd. That the Circuit Court was a competent tribunal, expressly made so by statute, to hear and determine the subject-matter of controversy, and no appeal was given from its decision.

APPEAL from the Circuit Court for Cecil County, in Equity.

The bill of complaint in this case sought to have the inquisition for the condemnation of the complainant's land declared null and void; and prayed that an injunction might issue, restraining the railroad company from entering upon or using said land without the consent of the complainant first had and obtained. The Court (Full Bench) passed an order refusing the injunction asked for, and dismissing the bill. The complainant appealed. The case is further stated in the opinion of this Court.

The cause was argued before BARTOL, C. J., STONE, MILLER, ALVEY and RITCHIE, J., for the appellee, and submitted on brief for the appellant.

*William Rowland, James T. McCullough,* and *Albert Constable,* for the appellant.

*William J. Jones,* and *Alexander Evans,* for the appellee.

ALVEY, J., delivered the opinion of the Court.

The application for an injunction in this case is based upon the theory, that the power and right of the appellee to take land by condemnation for the purposes of constructing or keeping in running condition its line of railroad from the eastern terminus of its bridge over the Susquehanna river to the town of Port Deposit, has been exhausted; and that, without other legislative authority than it has, its attempted exercise of that power is simply null and void.

The road was constructed under the authority conferred by the Act of 1853, ch. 138. By that Act the appellee obtained its power and authority to construct its bridge across the Susquehanna river at Havre-de-Grace; and the grant of that privilege was upon the condition that the appellee should make and construct a railroad from the eastern terminus of the bridge thus authorized to be constructed to the town of Port Deposit. It was provided that such railroad, when constructed, should be regarded as part of the existing railroad of the appellee, and should have all the privileges, exemptions and immunities of the then existing railroad of the company. Authority was conferred upon the company to enter upon any lands necessary for the construction of the road, buildings, etc., and to hold the same in fee simple; and such lands were authorized to be acquired by agreement or contract with the owners thereof, or where such agreements could not be made, it was provided that the company should have the same power and authority to have condemned such lands, as might be necessary for the purposes of said railroad, as was conferred on the company for the condemnation of lands, etc., by the Act of 1831, ch. 288, to incorporate the Baltimore and Port Deposit Railroad Company, since consolidated with and at the time of the passage of the Act of 1853, forming part of the appellee. It was then provided that the railroad authorized to be made

should be completed and in good order for the running of cars, within six months after the bridge was so far completed as to admit of the passage of cars.

In the original Act of incorporation of the Baltimore and Port Deposit Railroad Company, (Act of 1831, ch. 288,) to which reference was made, it is provided that *whenever* it shall be necessary for the company to have, use, or occupy any lands, etc., in order to the construction or repair of any part of the road or roads, the company is authorized to acquire the same by agreement or condemnation, and where condemnations are taken, the inquisitions are required to be returned into Court, and by the Court to be confirmed, if no sufficient cause to the contrary be shown.

According to the allegations of the bill, the bridge was completed in the year 1866, and the road from the bridge to the town of Port Deposit was completed for the running of cars in 1867. In acquiring lands to be used for the bed of the road and other necessary purposes, the appellee purchased of Jacob Tome, in 1856, a certain piece of land, and took a deed therefor, and entered into the possession and use thereof, and constructed its road over the same, and still so occupies it. In 1863 and 1867 the appellant brought actions of ejectment against the appellee, in the Circuit Court for Cecil County, for the recovery of this land, which had been acquired from Tome; and in 1879 the appellant obtained a verdict, and in March, 1880, there was judgment thereon for the land so held by the appellee. The title derived from Tome having thus proven defective, the appellee thereupon took proceedings under the provisions of the Act of 1853, ch. 138, to have condemned such portion of the land, so recovered by the appellant, as was necessary for the use and operation of its road; and the inquisition was regularly executed and returned into the Circuit Court for Cecil County, for confirmation or rejection, according to the direction

of the statute. The appellant appeared in Court and objected to the ratification of the inquisition, and then and there insisted, as ground of objection to the inquisition, that inasmuch as the bridge and the road had been completed, within the meaning of the Act of 1853, ch. 138, the appellee had no longer any right or power to condemn the land for the use and occupation of its road, against the consent of the appellant. But the Court overruled that and all other objections to the inquisition, and finally ratified and confirmed it. It is admitted that the damages awarded by the inquisition to the appellant have been duly tendered; and the sole ground of relief set up in the bill is, that the attempted exercise of the power of eminent domain in condemning the land of the appellant for the use of the road of the appellee was *ultra vires,* and therefore void.

By the terms of the Act of 1853, ch. 138, there is no express limitation, as to time, upon the right of acquiring land for the use of the road; but it is supposed that there is an implied limitation in the requirement that the road should be completed and in good order for running cars, within a certain time, which has past. The Act, however, should receive a reasonable interpretation for the accomplishment of the objects in view. The making of the road was a condition imposed upon the appellee, and it is its duty to maintain it and keep it in good working order. To do this the company must have the necessary means within its power; and hence it was provided, that whenever it should be necessary for the company to have, use or occupy, any lands, materials, etc., in order to the construction or repair of any part of its road or roads, it should be authorized to acquire the same by agreement or condemnation. The Act containing no express limitation or restriction, as to time, upon the exercise of the power of acquiring the necessary land for the use and maintenance of the road, it would seem to be

but a fair construction of it, that the power in this respect is, and was intended to be, commensurate with the necessities of the road, and the duties imposed upon the company in constructing and keeping it in proper repair. Such was the construction adopted, of a power of condemnation not certainly broader or more unlimited than that given by the Act of 1853, ch. 138, and the Act to which it refers, in the case of *Coster vs. N. J. R. Co.*, 3 *Zabr.*, 227, and the same case in the Court of Error, 4 *Id.*, 730. We should, therefore, not hesitate, if the question were in any proper way before us for review, to hold with the Circuit Court, that the power of condemnation, under the facts of the case, was properly exercised by the company.

But on the present application a Court of equity has not, nor has this Court as a Court of Appeal, any right or power whatever to review the judgment of the Circuit Court in ratifying the inquisition of condemnation. That judgment is final, and cannot be questioned by any person who was a party to the proceeding, and who could have presented all the defences which were open to him at the time. The Circuit Court was a competent tribunal, expressly made so by statute, to hear and determine the subject-matter of controversy, and no appeal was given from its decision. All objections and defences to the confirmation of the inquisition were open before it, and all parties to the proceeding were called upon to present their objections, of whatever nature they might be, and the Court was fully clothed with power and exclusive jurisdiction to hear and determine them, as between the parties to the proceeding; and when such determination was made, the whole matter was finally concluded. For though the jurisdiction conferred upon the Circuit Court in these cases is a special statutory one, yet in respect to all matters within the scope of the jurisdiction, the judgment is final and conclusive, and is no more open to question than the judgment

Brown *vs.* P., W. & B. Railroad Co.

of any other Court of final determination would be. As declared by the Supreme Court of the United States, in *Secombe vs. Railw. Co.*, 23 *Wall.*, 108–119, "The judgment of condemnation in this case was rendered by a competent Court, charged with a special statutory jurisdiction, and all the facts necessary to the exercise of this jurisdiction are shown to exist. A judgment thus obtained is no more subject to impeachment in a collateral proceeding than the judgment of any other Court of *exclusive* jurisdiction." See, also, 1 *Redf. on Railw.*, (5 ed.) *page* 271. No review can be had, in any direct proceeding, of such judgment (*Wilmington & Susq. R. Co. vs. Condon*, 8 *Gill & J.*, 443 ; *Hamilton vs. An. & Elk R. Co.*, 1 *Md.*, 553, 567; *Turnpike Co. vs. N. C. R. Co.*, 15 *Md.*, 193–198); nor will a Court of equity assume jurisdiction to review or stay that judgment for what may be supposed to be error in its rendition. It would in effect be doing indirectly what the law has not allowed to be done directly, by way of appeal; and this Court has held, upon more than one occasion, that there was no jurisdiction in equity to affect such a result. *Hamilton vs. An. & Elk R. Co.*, 1 *Md.*, 553; *Western Md. R. Co. vs. Patterson*, 37 *Md.*, 125; *Cumbl'd & Penn. R. Co. & Balto. & Ohio R. Co. vs. Penn. R. Co. in Md.*, 57 *Md.*, 267. The condemnation was incomplete and without effect until it was confirmed by the Circuit Court; and the jurisdiction over the subject-matter has been conferred upon no other tribunal; that jurisdiction in the Circuit Court is therefore both exclusive and final.

It follows that the order appealed from must be affirmed.

*Order affirmed.*

(Decided 12th July, 1882.)


MILLER, J., delivered the following opinion :

I assent to the affirmance of the order refusing this injunction, but do so upon the sole ground that the power

35          v. 58.

still remained in the company to have the condemnation in question made. As to this branch of the case I concur in the views expressed in the opinion of the Court. But if the company had exhausted its powers of condemnation before the proceeding to take the complainant's land was instituted, then it was acting *ultra vires*, and in such case I am clearly of opinion the landowner has the right to be protected by a Court of equity against such an unlawful taking of his property. I have expressed my views upon this subject in the dissenting opinion filed in the case of *The Cumberland and Pennsylvania Rail Road Company vs. Pennsylvania Rail Road Company in Maryland*, 57 *Md.*, 280.