## ROBERT C. HOPKINS ET AL. *vs.* THE PHILADELPHIA, WILMINGTON AND BALTIMORE R. Co.

*Eminent Domain—Power of Railway Company to Condemn Land to a Certain Extent Not Exhausted by First Condemnation of a Part Thereof—Appeal.*

When a railway company is authorized by its charter to condemn land necessary for the construction and repair of its road, not exceeding one hundred feet in width, without any limitation of time for the exercise of the right, and the company first condemns a strip of land seventy feet wide, the power of condemnation is not thereby exhausted, but the company may subsequently condemn adjoining land to the extent of thirty feet in addition.

When the charter of a railway company requires it to construct its road within ten years, and power is conferred to condemn land not exceeding one hundred feet in width, the company may, after having condemned land for its roadbed seventy feet wide and after the expiration of the ten years, condemn land thirty feet in width in addition to the original taking.

The action of the Circuit Court is exclusive and final in cases relating to the condemnation of land under the power of eminent domain, and no appeal lies to this Court from its action in confirming an inquisition except in cases where no right to condemn exists and the Circuit Court is without jurisdiction.

Appeal and writ of error from the Circuit Court for Harford County (WATTERS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*George L. Van Bibber* and *Richard Dallam*, for the appellants.

The appellants contend, *First.* That having once exercised the power of eminent domain on the property owned by the appellants, the company, under its charter, after the completion of its road and after it has been in operation for sixty years, has exhaused its powers and was unauthorized to institute the proceedings in this case.

*Second.* That by a proper construction of the company's charter there was granted to the company the power to appropriate for its right of way, as much of the Old Bay Farm as it might, in its discretion, elect to take within the limits of 100 feet, with such additional lands as might be necessary for cuts and embankments; and having made its election, by taking seventy feet, which proved sufficient for the construction and repair of its road, the powers granted are exhausted, and there cannot be a second exercise of them.

*Third.* That by a proper construction of the company's charter, the only power to appropriate private property for its corporate uses contained in it is that for the *construction and repair* of its road. That having once exercised this power on the Old Bay Farm, by taking a strip seventy feet wide, which proved sufficient for the construction of its road and for its operation for more than sixty years, the company is now prohibited, under the same powers, to take any additional part of said farm on the plea that the same is needed for the *construction and extention* of its road.

In consequence of legislation authorizing additional condemnations to be made quite a number of recent cases can be found in Ohio, Illinois, Indiana, Nebraska, Kansas and Arkansas, and upon their authority Mr. Lewis in his late work on *Eminent Domain* seems to incline to the opinion that there can be as many exercises of a power of eminent domain as the exigencies of the business of railroads may demand.    In

this State, however, there has been no such general legislation ; each charter stands by itself and must receive only such construction as its language permits, and that according to the principles of the common law, and well-established precedents.

Suppose the original right of way over the Old Bay Farm had been by grant and the deed had given to the defendant a strip of land clear through the farm, upon which to build its road, to be located and laid out by the defendant in such place and way, not, however, to exceed 100 feet in width, as it might elect and determine, and that the defendant, in acceptance of the grant, exercised the election, located, laid out and enclosed a strip of land less than 100 feet, viz : 70 feet in width, and went into possession thereof, built its road thereon with the acquiescence of the grantor, and that said possession, enclosure and acquiescence upon the strip as thus located, continued for more than sixty years, and then suppose an attempt was made by the defendant either to relocate, alter or add to the original strip, could it be for a moment contended that a Court would do otherwise than apply the common law rule, "that if a man once determines his election, it shall be determined forever ?"    *Com. Digest, title Election,* C. 2; *Bacon's Abridgment, title Election ; Bannon* v. *Angier,* 2 Allen, 128; *Warner* v. *R. R. Co.,* 39 Ohio St. 70; *Morris & Essex R. R.* v. *Central R. R.,* 2 Vroom, 205.

If a grant is to be so construed, where the rule is to construe it most strongly against the grantor and in favor of the grantee, how can it be possible to say that the powers granted defendant by its charter, in the absence of any express authority for it to add to or alter its originally selected right of way, and where a strict construction is required, can give it greater rights against the appellants than it would have had under a grant?   It has been held by the Courts of most of the States where there are no statutes providing for a second condemnation, that the powers granted to a corporation to take lands when once exercised are exhausted.    *Co. of Ramsay* v. *Stees,* 28 Minn. 326; *Water Comm.* v. *Lawrence,* Edward Ch. 556; *Lodge* v. *P., W. & B. R. R.,* 8 Phila. 345;

*Peavy* v. *Calais R. R.*, 30 Maine, 498; *People* v. *N. Y. and Harlem, R. R.*, 45 Barbour, 73; *Jermain* v. *Waggener*, 1 Hill, 279; *Ala. Great S. R. R.* v. *Gilbert*, 71 Ga. 591; *Chaffee's Appeal*, 56 Mich. 244; *Childs* v. *Central R. R.*, 33 N. J. L. 323; *Morrow* v. *Commonwealth*, 48 Pa. St. 307 and 308; *Poughkeepsie Bridge Co. case*, 108 N. Y. 483; *Prov. and Wor. R. R. case*, 17 R. I. 341; *McMurtrie* v. *Stewart*, 21 Pa. St. 322; *Lusby* v. *R. R. Co.*, 73 Miss. 360—overruling and denying the authority of 42 Miss. 555; *Pierce on Railroads*, 254.

*Thos. H. Robinson*, for the appellee.

The appellants objected to the confirmation of the inquisition for the reason set forth, and all of their objections were overruled by the Circuit Court for Harford County and the inquisition confirmed.    This Court has decided in the case of the *Cumberland and Penna. R. R. Co., etc.*, v. *The Penna. R. R. Co.*, in 57 Md. 267—that there is a great distinction between the cases when the proceedings are void for want of authority (as in condemning land without having authority to do so in their charter), and the case of a company seeking to condemn land for the purpose *authorized* by its charter.    In the latter case whether the particular property it is seeking to condemn for that purpose is liable, or any question of the mode of procedure, or any matter of irregularity in the exercise of the power, are only questions of the *quo modo* of exercising the chartered power ; *such as whether the power has been exhausted by one condemnation*, etc., all of which acts are *voidable* merely and not *void*, however irregular or however effective as grounds of objection to the confirmation of the inquisition before the proper tribunal having exclusive jurisdiction over it.    See also *Brown* v. *P., W. & B. R. Co.*, 58 Md. 539.

Railroads, as all know, are things of growth.    They enlarge with the development of the country.    Starting as small enterprises, doing a trifling business, as the country develops they expand; that which in the inception afforded ample facilities, becomes inadequate for the increasing business ; and the company stands between two difficulties—it must either im-

perfectly discharge its duties to the public and thereby expose itself to liability for damages, or enlarge its facilities, which if it cannot be done by the power of eminent domain will expose it to any exorbitant demands for land which business rivals, or avaricious individuals may see fit to exact. It has been established by this Court, and the Courts of this country and England, that the power to condemn land is not exhausted by the single exercise, and that it is not necessary for a railroad to acquire all the land that will ever be needed for the road at the beginning of the undertaking, but that it may take more land for the expansion of its system as increased business may require. *Stamps* v. *The Birmingham, etc., R. Co.*, 7 Hare, 251; *Webb* v. *The Manchester, etc., R. R. Co.*, 4 Myl. & C. 116; *Simpson* v. *Lancaster, etc., R. R. Co.*, 4 Eng. Ry. & C. Cases, 625; *Fisher* v. *Chicago, etc., R. R. Co.*, 104 Ill. 323; *Chicago, etc., R. R. Co.* v. *Wilson*, 17 Ill. 123; *Peck* v. *Louisville, etc., R. R. Co.*, 101 Ind. 366; *Prather* v. *Jeffersonville, etc., R. R. Co.*, 52 Ind. 16; *Central Branch Union Pacific R. R. Co.* v. *Atchinson, etc., R. R. Co.*, 26 Kan. 669; *Mississippi, etc., R. R. Co.* v. *Devaney*, 42 Miss. 555; *Atlantic, etc., R. R. Co.* v. *St. Louis*, 66 Mo. 228; *Dietrich* v. *Lincoln, etc., R. R. Co.*, 13 Neb. 361; *Virginia, etc., R. R. Co.* v. *Lovejoy*, 8 Nev. 100; *Beck* v. *United N. J. R. R., etc., Co.*, 39 N. J. L. 45; *Childs* v. *Central R. R. Co.*, 33 N. J. L. 323; *Seldon* v. *Delaware, etc., Canal Co.*, 29 N. Y. 634; *Toledo, etc., R. R. Co.* v. *Daniels*, 16 Ohio State, 390; *Farnham* v. *Delaware, etc., Canal Co.*, 61 Pa. St. 265; *P., W. & B. R. R. Co.* v. *Williams*, 54 Pa. St. 103; *Chicago & Western R. R. Co.* v. *Ill. Central R. R. Co.*, 113 Ill. 156; *Hamilton* v. *Annapolis & Elkridge R. R. Co.*, 1 Md. 553; *Brown* v. *P., W. & B. R. R. Co.*, 58 Md. 539; *Lewis on Eminent Domain*, vol. I, sec. 259, 610 (2d ed.); *Randolph on Law of Eminent Domain*, sec. 116; *Mills on Eminent Domain*, 2d ed., sec. 58V.

Aqueduct companies may condemn new supplies of water from time to time in order to keep abreast of the times of the communities to whose wants they are authorized to minister. *Woodbury* v. *Marblehead Water Co.*, 145 Mass. 509; *Olmstead*

v. *Morris Aqueduct Co.*, 46 N. J. L. 445; *Johnson* v. *Utica Water Works Co.*, 67 Barb. 415; *Randolph on Law of Eminent Domain*, sec. 116. And a railroad may continue to condemn for such incidental use as the growth of business demands. *Randolph on Law of Eminent Domain*, sec. 116.

SCHMUCKER, J., delivered the opinion of the Court.

The Baltimore and Port Deposit Railroad Company was incorporated by the Act of 1831, ch. 288. Among the powers conferred upon the company was that of acquiring by condemnation the land necessary to enable it to locate, construct and repair a railroad from Baltimore to Port Deposit not exceeding one hundred feet wide with the necessary additions for embankments and excavations and with as many sets of tracks as it might deem necessary. Sec. 24 of the Act required the road to be commenced within two years and to be finished within ten years thereafter.

The Act of 1837, ch. 30, created the Philadelphia, Wilmington and Baltimore Railroad Company by the union of several then existing companies including The Baltimore and Port Deposit Railroad Company, and conferred upon the new company the rights, powers and limitations of the several former ones which entered into its composition.

In 1837 The Baltimore and Port Deposit Railroad Co. condemned a strip of land seventy feet wide and about one mile long through a property in Harford County known as the Old Bay Farm, upon which it constructed the railroad which has since then been operated by it and its successor, The Philadelphia, Wilmington and Baltimore Railroad Co.

In April, 1901, the latter company deeming it necessary for the proper extension and construction of its railroad to occupy a wider strip of land through the Old Bay Farm instituted proceedings for the condemnation of thirty more feet of land, of which ten feet were on one side and twenty feet on the other side of its present roadway through the farm. The appellants who are the owners of the farm objected to the confirmation of the inquisition, but the Circuit Court for Har-

ford County confirmed it, overruling their objections, and they brought the proceedings here for review upon a writ of error and appeal.

Some of the appellant's objections relate to matters of detail in conducting the condemnation proceedings, but we deem it necessary for the purposes of this opinion to consider only the fundamental objection that the whole condemnation was *ultra vires* and *void ab initio*, and that the Circuit Court had no jurisdiction to confirm the inquisition.    Two reasons are urged by the appellant in support of this objection.    The first and principal one is that the power of the appellee to condemn land for its roadway was exhausted by the single exercise of that power made in the original condemnation in 1837 of the strip of land seventy feet wide.    The second reason is that the power of condemnation conferred upon the Baltimore and Port Deposit R. R. Co. was by its charter limited to the acquisition of land for the purposes of construction and repair and that the charter required the road to be *constructed within* a period of *ten years* which expired long ago, and it is not pretended that the present condemnation was for purposes of *repair.*

The appellee has made a motion to dismiss the appeal because the action of the Circuit Court is exclusive and final in condemnation cases, which are special and limited statutory proceedings from which the law provides for no appeal.    The general proposition thus relied upon by the appellee in support of its motion has been upheld by this Court in numerous cases, in some of which the condemnation was made by the present appellee or one of its component corporations.    *Brown v. P., W. & B. R. R. Co.*, 58 Md. 539; *Wil. & Susqh. R. R. Co.* v. *Condon*, 8 G. & J. 443; *Western Md. R. R. Co.* v. *Patterson*, 37 Md. 136; *C. & P. R. R. Co.* v. *Penn. R. R. Co.*, 57 Md. 274; *B. & H. Turnpike Co.* v. *North. Centl. Ry. Co.*, 15 Md. 198.

The only ground upon which the present appeal can be maintained is that the appellee had no right at all to make the condemnation complained of and for that reason the Circuit

Court exceeded its jurisdiction in confirming the inquisition. If such be the case the decisions support the right of appeal. *George's Creek Coal & Iron Co.* v. *New Cent. Coal Co.*, 40 Md. 425; *B. & O. R. R. Co.* v. *Waltemyer*, 47 Md. 331; *Herzberg* v. *Adams*, 39 Md. 312. It therefore becomes necessary in order to determine the appellants' standing in this Court to asertain whether or not the appellee possessed the power to condemn the thirty feet of land now in question.

There is some conflict in the decided cases as to the extent to which a railroad company or similar corporation that serves the public convenience may exercise the right of condemnation conferred upon it by statute. This want of harmony in the cases is in large measure due to the variety of provisions found in the charters of the different corporations and in the laws of the several States regulating the extent as well as the method of exercise of the right.

The general principles applicable to this subject, especially as declared in the later cases, are fairly stated in the 2nd ed. of *Lewis on Eminent Domain*, vol. 1, sec. 259, as follows : " In the absence of any restrictions or limitations the power to take private property may be exercised by the grantee, from time to time, as necessity may require. If this were not so it would be necessary to anticipate all future needs at the outset. The company condemning would thus not only have to take and pay for property in advance, but it might be saddled with property which it could never use at all. On the other hand, either from taking too narrow a view of the future or from the growth of business beyond any reasonable anticipation, it might in a few years find itself unable properly to discharge its duties to the public. Accordingly, the railroad company, after having located and completed its road, may, as the expansion of its business requires and within the limitations imposed by statute, if any, take additional land for right of way, side tracks, branches, etc., or for any other purpose for which its compulsory powers may be exercised." See also to the same effect, *Brown* v. *The P., W. & B. R. R. Co.*, 58 Md. 539; *Childs* v. *C. R. R. of N. J.*, 33 N. J. Law R. 323;

*C., B. & Q. R. R. Co.* v. *Wilson*, 17 Ill. 127 ; *Fisher* v. *Chicago, &c., R. R.,* 104 Ill. 326 ; *Mississippi, &c., R. R.* v. *Devaney,* 42 Miss. 594 ; *Seldon* v. *Canal Co.,* 29 N. Y. 634 ; *Farnhan* v. *Canal Co.,* 61 Pa. St. 265 ; *P., W. & B. R. R. Co.* v. *Williams,* 54 Pa. St. 107 ; *Lewis on Eminent Domain,* vol. 1, sec. 259 2nd ed.; *Mills on Eminent Domain,* sec. 58B.

In the present case the appellee was, by the Acts of 1831 and 1837 already referred to, invested with all rights and powers necessary to the construction of its railroad not exceeding one hundred feet in width with as many tracks as it might *"deem necessary"* and to acquire land to that extent by condemnation for the construction or repair of the road. It is to be observed that this power is not an alternative one to condemn a roadway 100 feet in width or less. It is to condemn whatever may be deemed necessary not exceeding 100 feet in width and there is no express limitation of time fixed for its exercise. It would be a strained construction of this power to hold that because the appellee did not find it necessary in the infancy of its operation to condemn a roadway of more than seventy feet in width, it thereby lost its power to condemn the remaining thirty feet when it found their acquisition necessary to enable it to properly respond to the increasing demand of its greatly enlarged business. Its power of condemnation as to the thirty feet in width last taken cannot be said to have been exhausted, because as to them it has never until now been exercised.

In *Childs* v. *The Central Railroad of N. J., supra,* the Central Railroad Co. had been formed like the present appellee by the combination, under statutory authority, of two pre-existing railroad companies, the Elizabethtown and Somerville R. R. Co., and the Somerville and Easton R. R. Co. The first named of these two companies was authorized by its charter to condemn a roadway *not exceeding sixty-six feet in width* and in the exercise of that power it had condemned and for some years prior to the union of the two roads had used a roadway only thirty-three feet wide. After the consolidation of the two roads into the Central Railroad Company, that

company proceeded to widen by condemnation to fifty feet the roadway of thirty-three feet which had been condemned and used by the Elizabethtown and Somerville R. R. Co. The condemnation was resisted by the owner of the land upon the ground that the power to condemn a roadway for the Elizabethtown and Somerville line had been exhausted by the original condemnation of the roadway thirty-three feet wide, but it was held upon appeal that as to the excess over thirty-three feet in width of the roadway the power had never been exercised, and the right of the Central Railroad Co. to condemn the additional strip of land was upheld.

In *Brown* v. *The P., W. & B. R. R. supra*, the present appellee had been authorized by the Act of 1853,ch. 138, to erect a bridge over the Susquehanna River upon condition that it would construct a railroad from the bridge to the town of Port Deposit, and it was clothed with the same power, that was conferred by the Act of 1831, ch. 288, upon the Balto. and Port Deposit R. R. Co., to purchase or condemn land for the construction of the new road, which, when completed, was to be part of its existing railroad. The new road was by the Act required to be completed within a certain time. The appellee built the new road in part upon land purchased by it from Jacob Tome. After the expiration of the time fixed by the law for the completion of the new road and after it had in fact been completed and was in operation, a defect was discovered in the title to the land which had been bought from Tome and proceedings were taken by the appellee to condemn the land under the power conferred on it by the Act of 1853.

The owner of the land appeared to the condemnation proceedings in the Circuit Court and objected to the ratification of the inquisition upon the ground that the attempted exercise of the right of condemnation by the appellee after the time fixed for the completion of the road was *ultra vires*. His objections were overruled by the Court and he then applied by a bill in equity for an injunction to prevent the appellee from entering upon or using the land and for a decree declaring the condemnation null and void. The Circuit Court

dismissed the bill and this Court upon an appeal affirmed the decree holding that the power of condemnation had been properly exercised and that the appellant who had appeared to the condemnation proceedings was concluded by the judgment rendered therein. Although the appeal in that case was not from the condemnation proceeding, JUDGE ALVEY in the the Court's opinion stated the principles applicable to the exercise of the power of condemnation as follows :

"By the terms of the Act of 1853, ch. 138, there is no express limitation as to time upon the right of acquiring land for the use of the road ; but it is supposed that there is an implied limitation in the requirement that the road should be completed and in good order for running cars within a certain time which, has past. The Act, however, should receive a reasonable interpretation for the accomplishment of the objects in view. The making of the road was a condition imposed upon the appellee and it is its duty to maintain it and keep it in good working order. To do this the company must have the necessary means within its power and hence it was provided that whenever it should be necessary for the company to have, use or occupy any lands, materials, &c., in order to the construction or repair of any part of its road or roads it should be authorized to make the same by agreement or condemnation. The Act containing no express limitation or restriction as to time, upon the exercise of the power acquiring the necessary land for the use and maintenance of the road, it would seem to be but a fair construction of it that the power in this respect is and was intended to be commensurate with the necessities of the road and the duties imposed upon the company in constructing and keeping it in proper repair. Such was the construction adopted of a power of condemnation, not certainly broader or more unlimited than that given by the Act of 1858, ch. 138, and the Act to which it refers in the case of *Coster* v. *N. J. R. Co.,* 23 N. J. L. (3 Zabr.) 227, and the same case in the Court of Error, 24 N. J. L. (4 Zabr.) 730. We should, therefore, not hesitate, if the question were in any proper way before us for review, to hold with the Circuit

Court that the power of condemnation under the facts of the case was properly exercised by the company."

The appellant strongly contended that the terms of the charter of the Baltimore and Port Deposit R. R. Co. put that company to an election to condemn either a roadway one hundred feet wide or a narrower one and that by the original taking of the strip of land but seventy feet wide it had exercised its election and that no power remained to it or to the appellee as its successor to make any further condemnation. It is plain, however, that this contention amounts to but a special form of statement of the general proposition already considered by us that the entire power of condemnation was exhausted by the taking of the seventy foot strip, and we therefore deem it unnecessary to make it the subject of special discussion.

We are of opinion both upon principle and authority that a reasonable construction of the charter of the Baltimore and Port Deposit Railroad Company requires us to hold that the power of condemnation thereby conferred upon that company was not exhausted by the original taking of the roadway seventy feet wide, and that it did not lapse or expire upon the completion of the original railroad, but that the appellee had the power to make the condemnation set out in the record in this case and that therefore the Circuit Court for Harford County had exclusive jurisdiction over the condemnation proceedings and no appeal from its decision lies to this Court.

The motion to dismiss the appeal must prevail.

*Appeal dismissed with costs and writ*
*of error quashed.*

(Decided January 16th, 1902.)