# CIRCUIT COURT NO. 2 OF BALTIMORE CITY

Filed December 31, 1892.

## THE BALTIMORE & JERUSALEM TURNPIKE COMPANY

### VS.

## THE BALTIMORE & OHIO RAILROAD COMPANY ET. AL.

*J. J. Alexander* for plaintiff.

*Cowen & Cross* and *Fisher, Bruce & Fisher* for defendant.

WICKES, J.—

When the Baltimore Belt Railroad Company in the construction of their road reached the line of the Baltimore and Jerusalem Turnpike road the plaintiff in this proceeding, it assumed authority to cross over said turnpike, by virtue of the power conferred upon it by the Act of Incorporation and the City Ordinance passed in pursuance thereof, without first making or tendering compensation.

The ordinance provides that it shall pass over "Belair avenue by iron bridges or viaducts," but does not define at what distance the said structures shall be placed above the grade of the road.

The turnpike company, now in possession of Belair avenue, admitting the power of the Legislature and the city, to confer the authority to cross their road, denied the right to exercise it, until "just compensation as agreed upon between parties, or awarded by a jury, was first paid or tendered," as required by Section 40, Article III, of the Constitution. In other words, that a crossing such as is contemplated by the railroad company, constitutes a "taking of private prop-

erty" within the meaning of the constitutional inhibition.

It is submitted that if it is a "taking" within the scope of that meaning, that such compensation must first be made, and if not, that the plaintiff must resort to a Court of law for any damage it may sustain.

It was difficult to tell from the answers filed by the company defendant, what its real purpose is in reference to this crossing, whether it proposed to adhere to the height at which it placed its temporary structure, fifteen feet above grade, or to lessen the distance when it proceeds to build its permanent bridge. But in answer to an inquiry propounded at the argument, it was asserted, through its counsel, that twelve feet is to be the height of the permanent bridge, and we are to treat that as if it had been stated in the answer. Indeed the profile map furnished by it to the plaintiff, so shows upon its face. The company plaintiff contends that such a structure at such an elevation, will seriously interfere with the traffic on their road, and assuming such to be the fact, we proceed to consider whether in that event it constitutes such a taking of their property as requires compensation to be first paid or tendered. The Baltimore and Jerusalem Turnpike Company is lawfully in possession of this road. By the Act of 1860, the Baltimore and Little Falls Turnpike Company was incorporated with power to build a turnpike road on what is called in this case "Belair avenue." Later on, in 1867, the Legislature incorporated the company plaintiff, in its stead, and vested in it the same powers conferred upon the old company in 1860; including the right to build toll-houses, collect tolls, condemn property and also with the additional power to diverge from the bed of the road, and occupy a width of thirty feet on each side of the center of the road, or an entire width of sixty feet. In other words, the State parted with so much of its right in a public highway as was necessary to vest in a private corporation authority to enter upon it, make a large expenditure of money in the construction of an artificial road, binding it under a severe penalty to keep it in repair, and reserving to the public the right to pass and repass upon it, upon payment of such tolls as were prescribed.

That such an easement is property, seems to have been abundantly decided. It is text book law, and I know of no suggestion to the contrary in our own cases.

Hill on Em. Do., 31. Elliott on Roads and Streets, 158, and cases cited in notes.

Indeed if I correctly appreciated the arguments of the learned counsel who represented the defendants, their contention was based chiefly upon the ground that conceding the property right, there was no such *taking* here as is contemplated by the Constitution.

The theory upon which this branch of the case was presented seemed to be that an actual, physical seizure of the *corpus* of property is necessary to constitute such a taking. But I do not so understand the law.

Said Elliott, *supra* p. 155, in speaking of the literal meaning of the word as used in the Constitution, "The rule adopted by the Courts is much more liberal to the owner (see cases cited in note). The destruction of a substantial right, or the serious interference with the use or enjoyment of property, will be deemed a taking, within the meaning of the organic law."

When a corporate franchise is directly and materialy impaired there is a taking. Murray vs. Sharp, 1 Bosw. 539. In Pumpeley vs. Green Bay Co., 13 Wall. 166, the argument of defendant was that there was no *taking* of the land in its literal sense, and that damage was therefore consequential. But, said Miller, J., delivering the opinion of the Court, "It would be a very curious and unsatisfactory result, if in construing a provision of constitutional law, always understood to have been adopted for protection and security to the rights of the individual as against the government, and which has received the commendation of jurists, statesmen and commentators as placing the just principles of the common law on the subject beyond the power of ordinary legislation to change or control them, it shall be held that if the government refrains from the absolute conversion of real property to the uses of the public, it can destroy its value entirely, can inflict irreparable and permanent injury to an

extent; in effect subject it to total destruction without making any compensation, because in the narrowest sense of the word, it is not *taken* for the public use. * * * But there are numerous authorities to sustain the doctrine that a serious interruption to the common and necessary use of property, may be equivalent to the taking of it, and that under the constitutional provisions it is not necessary that the land should be absolutely taken."

Turning to our State decisions, I find, among others, the case of the Baltimore and Havre de Grace Turnpike Co. vs. Union R. R. Co., 35 Md. 224, which bears a strong resemblance to the case at bar. The company defendant in that case found it necessary to cross the turnpike both at grade and by a viaduct twenty feet high. There was no assertion of a right to either mode of crossing, except by first summoning a jury and condemning the two crossings over the turnpike road. The contention was, not that this proceeding was unnecessary, but that, as the turnpike company was so seriously injured by the building of the railroad, their entire franchise ought to be condemned and paid for. This the Court of Appeals refused to sanction, but there is no suggestion in the case that the railroad company had a right to cross either at grade or above grade, without first making or tendering compensation. Said the Court: "The grant to the appellee is but an appropriation of the land over which the franchise of the former is used, to another distinct public use, not inconsistent with the uses and easement of the appellant. This subsequent appropriation, it is true, may interfere with the travel of the road of the appellant to the extent of diminishing the tolls received on account thereof, but the injury and damages accruing therefrom, be they ever so great, are matters for the consideration of the jury in awarding compensation." And again, "It is sufficient to say that, after an examination of all the cases referred to, we are of opinion that the legislature, in the exercise of the right of eminent domain, can authorize and empower a railroad corporation to cross another railroad or *turnpike road on making compensation.*"

I therefore think that the company plaintiff has a right to enjoy the easement granted by the State, together with all necessary incidents; and that such easement is a property right. That its use of the road is not limited to the surface thereof, but extends sufficiently far into the zone above to enable whatever traffic comes upon it to pass without obstruction. And that any obstacle placed within such area of user constitutes a "taking" within the meaning of the Constitution. If the contention of the defendants is correct, then a bridge can as well be placed one foot above the grade as twelve feet above, provided the travel on the road is interfered with in both cases. It is not, for the purpose of this argument, a question as to how great the interference will be, but whether there will be an impediment to the free use of this road by the Company. If seriously injured at all in the enjoyment of their rights, it is for the jury to say how much.

An effort has been made to bring this case within the scope of the decision in O'Brien vs. Baltimore Belt R. R. Co., 74 Md. 363, touching the rights of the owners of abutting property on the public streets of this city. But, in my opinion, an entirely different principle applies. A street is a highway free to all, and maintained not for private gain but for the public benefit.

In it, no private corporation, such as a turnpike company has any special property rights. The power of the Legislature over it, so long as it is not diverted from the public primary use is very extensive, much more extensive indeed, than if a private corporation had rights in a way under a charter granted to it. And it may well be that while an abutting owner is remitted to a Court of law because his injury is of an "incidental or consequential nature," that a private owner of an easement whose property rights are directly affected, may come into a Court of equity for relief.

I am therefore of opinion that the case now under consideration is not ruled by the principle decided in the O'Brien case.

It is said that no damage will be done by this structure and that therefore there is nothing upon which to base compensation. But it is impos-

sible to read the testimony submitted without reaching a different conclusion. If only the largest loaded wagons are driven away by an obstruction twelve feet above the track, that is of itself and injury demanding compensation. If horses are frightened by a steam engine passing over their heads at that distance, and vehicles are for this reason driven to other roads, certainly some injury is done. But these are all questions for a jury to determine, if the parties cannot themselves agree upon the compensation to be paid.

It is further said that because the company has already a bridge on its line of road, only twelve feet high (at a point remote from this location), that another of the same elevation cannot injuriously affect it. But the witnesses have testified that the turnpike company has long intended to raise the bridge in question. It is at all events under their control and can be changed whenever the business of their road renders it necessary. But a permanent iron bridge owned and controlled by another corporation, once placed in position, will remain, whatever the effect may be upon the travel on the road of the company plaintiff.

As to the abutments referred to in the pleadings and the evidence, they seem to have been built within thirty feet from the center of the road which the turnpike company is authorized to take by its charter. But it has never availed itself of the power given it, and in the meantime the company defendant has bought the land at this point in fee. Whatever the rights of the turnpike company may be under their charter, should it ever proceed by condemnation to exercise them, I can see no reason why the owners of the soil may not in the meantime use it in any way they see proper.

True, a paper has been produced in evidence, under exception, in which the landowners on the line of the turnpike "grant and relinquish" to the company a right of way over their lands so far as the same may be required in the construction of the road. But this paper was never recorded, and there is no evidence that any actual notice of it was brought home to the company defendant at any time before it purchased the land in question. I do not, therefore consider that they are bound by it, or that they took the property *cum onere*.

It is averred in the bill that the defendants intend to reduce the grade of the turnpike road three feet immediately below the bridge, by digging down that depth, and thus making the distance between the road and the bridge fifteen instead of twelve feet. But the defendants have abandoned such purpose, if it was ever entertained, and of course have no right to disturb plaintiff's property, in this manner without their consent.

Other questions have been suggested in the argument, but are not I think material to the consideration and decision of the main issues presented.

A decree will be signed giving effect to the views expressed in this opinion, not only against the Baltimore Belt Railroad Company, but also against the Maryland Construction Company, and the contractors, Ryan and McDonald, who are in charge of the work, and therefore made defendants in this cause.